Fleck-Atlantic Company, Appellant, *v.* Indemnity Insurance Company of North America.

Argued January 4, 1937. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Ashton Locke Worrall,* with him *Carlos Berguido, Jr.,* of *Brown & Williams,* for appellant.

*Herbert A. Barton,* with him *Swartz, Campbell & Henry,* for appellee.

OPINION BY MR. JUSTICE LINN, March 22, 1937:

The appellant plaintiff sues on a surety bond for the balance due for labor and materials furnished for the Juniata Park Housing Corporation buildings in Philadelphia. Defendant's statutory demurrer was sustained. The bond was given in the following circumstances. The

Juniata Park Housing Corporation, referred to as the owner, proposed to construct certain buildings and made a contract for their construction with Turner Construction Company, the general contractor. This general contractor made a sub-contract with T. J. Kelly, Incorporated, called sub-contractor, to supply labor and material for plumbing, heating, etc. Article XVIII provided—"The Sub-Contractor agrees to furnish to the Turner Construction Company a bond in the amount of $150,000 guaranteeing the faithful performance of the provisions of this contract, the form of such bond and the surety thereon to be satisfactory to the Turner Construction Company." Defendant contends that the bond was given pursuant to that provision of the contract.

The bond is as follows: "KNOW ALL MEN BY THESE PRESENTS, That we, Timothy J. Kelly, Inc. Atlantic City, N. J. (hereinafter called 'Principal') as Principal, and the INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, a Corporation organized and existing under the laws of the State of Pennsylvania, and authorized to transact business in the State of Philadelphia [?], (hereinafter called 'Surety'), as Surety, are held and firmly bound unto TURNER CONSTRUCTION COMPANY, PHILADELPHIA, PENNA. (hereinafter called 'Obligee'), as Obligee, in the penal sum of ONE HUNDRED FIFTY THOUSAND AND 00/100THS Dollars ($150,000), good and lawful money of the United States of America, for the payment of which, well and truly to be made, we bind ourselves, our heirs, administrators, executors, successors and assigns, jointly and severally, firmly by these presents.

"SEALED with our seals and dated this 7th day of March A. D. 1934.

"WHEREAS, the above bounden Principal has entered into a certain written contract with the above named Obligee, dated the 7th day of March 1934 for the installation of the plumbing and heating system for the

Juniata Park Housing Corporation, Philadelphia, Penna. which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein.

"Now, therefore, the condition of the above obligation is such, That if the above bounden Principal shall well and truly keep, do and perform each and every, all and singular, the matters and things in said contract set forth and specified to be by the said Principal kept, done and performed at the time and in the manner in said contract specified, and shall pay over, make good and reimburse to the above named Obligee, all loss and damage which said Obligee may sustain by reason of failure or default on the part of said Principal, then this obligation shall be void; otherwise, to be and remain in full force and effect."

Thereafter, on the order of the sub-contractor, appellant furnished material in the amount of $68,203.29 of which a balance of $25,263.00 remains unpaid and is claimed in this suit.

Plaintiff contends that the contract between the general contractor and the sub-contractor, which, by reference, was made part of the bond, shows that the intention of the parties in giving the bond was to protect parties supplying material to the sub-contractor, as well as to protect the general contractor, Turner Construction Company, from loss resulting to it from the sub-contractor's default. The defendant contends that it is a simple bond to indemnify the general contractor against loss resulting from the sub-contractor's failure to comply with its contract to supply and install the plumbing and heating.

Surety bonds have been found necessary in the construction of public works and in the performance of private building contracts. For public works, they are frequently required by statute,[1] and by municipal ordi-

---

[1] Many statutes of this kind may be found under appropriate titles in 53 PS. For the federal statute, see 40 USCA section 270.

nance.[2]  Provision is generally made for two bonds, one guaranteeing performance, and an additional bond guaranteeing payment of labor and material.  If statutes require a bond assuring performance to one obligee and also payment for labor and material to another obligee, or two bonds, one (a) for performance and the other (b) for payment, the obligee materialman, in both cases, is considered a party to the contract and entitled to sue. If, in the absence of statute, the bond provides for (a) and (b) the parties will be entitled to its benefit, and if separate bonds are given, one for (a) and one for (b), the parties may likewise claim under the appropriate bond.  Both contingencies (a) and (b) were provided for in the bonds considered in *Concrete Products Co. v. U. S. F. & G. Co.*, 310 Pa. 158, 161, 165 A. 492;[3] *Com. v. Great American Indemnity Co.*, 312 Pa. 183, 187, 167 A. 793[4] *McClelland v. New Amsterdam Casualty Co.*, 322 Pa. 429, 432, 185 A. 198,[5] and in each of these cases it was held that a materialman was entitled to sue.

A bond given pursuant to a contract incorporated in the bond, will be construed in the light of the terms of the contract and the attendant circumstances, but "the obligation of a bond cannot be extended beyond the plain import of the words used": *Lancaster v. Frescoln*, 192

---

[2] *Philadelphia v. Stange et al.*, 306 Pa. 178, 159 A. 7; *Philadelphia v. Jackson & Co.*, 280 Pa. 319, 124 A. 446.

[3] The bond contained the following: "and shall pay all lawful claims of subcontractors, materialmen and laborers for labor performed and materials furnished in the carrying forward, performing or completing of said contract, we agreeing and assenting that this undertaking shall be for the benefit of any materialman or laborer having a just claim, as well as for the obligee herein."

[4] The bond provided that the contractor "shall pay all lawful claims of subcontractors, materialmen and laborers for labor performed and materials furnished in the carrying forward, performing or completing of said contract."

[5] The bond provided that the contractor shall "pay all bills for labor, materials and supplies furnished."

Pa. 452, 457, 43 A. 961; *Erie v. Diefendorf*, 278 Pa. 31, 122 A. 159.

The bond in suit assures that the sub-contractor, Kelly, Incorporated, will perform its contract with the general contractor, and that in default of performance, the surety will pay "all loss and damage which said Obligee [the general contractor] may sustain by reason of failure or default" of the principal, Kelly, Incorporated. Appellant, however, says that as the general contract has been incorporated by reference, the covenant in the bond guaranteeing performance must be construed not only as the assumption of an obligation by the defendant to do everything that the sub-contractor was obligated to do for the general contractor, but, in addition, as assurance to materialmen that the sub-contractor's promises, if any, to them, would be performed.

The general contract contains two provisions, each calling for a bond, but for different purposes. Article XVIII provided, as appears above, for a bond in "form . . . satisfactory to the Turner Construction Company," the general contractor, in the sum of $150,000 for the performance by the sub-contractor of his contract with the general contractor. The terms of the bond, considered in the light of the contract, show that it was obviously given pursuant to that provision. A bond for a different purpose, "satisfactory to the Government," might have been required by another provision, appearing in Sheet A. This is an addition to the contract and deals with details of the work required to be performed. It contains certain Labor Clauses, inserted pursuant to the requirements of the federal Public Works Administration (paragraph 1); provisions concerning materials (paragraph 2); records and reports (paragraph 3); restrictions as to contractors (paragraph 4). Paragraph 5 is entitled Miscellaneous. The pertinent parts of this paragraph are as follows: "(A) Construction contracts shall be supported by ade-

quate surety or other bonds or security satisfactory to the Government for the protection of labor and materialmen employed on the Project, or any part thereof, except in such cases as this requirement may be waived in writing by the Housing Division of the Public Works Administration. (B) There shall be provided all necessary services and all materials, tools, implements and appliances required to perform and complete entirely and in a workmanlike manner the work provided for in this contract. Except as otherwise approved in writing by the Supervisor, such services shall be paid for in full at least once a month, and such materials, tools, implements and appliances shall be paid for at least once a month to the extent of 90% of the cost thereof to the contractor, and the remaining 10% shall be paid thirty days after the completion of the part of the work in or on which such materials, tools, implements or appliances are incorporated or used. Such payments shall be made in lawful money of the United States."

If, pursuant to that provision, a bond "satisfactory to the Government for the protection of labor and material men employed on the Project, . . ." were given, it would be different in content from the performance bond required by Article XVIII. Conceivably, one bond might have been drawn which could contain the assurances required by Article XVIII and paragraph 5 of Sheet A, but that was not done. As the contract provided that two bonds might be required, each for a different purpose, the normal assumption would be that when the bond in suit was applied for and obtained, it was the bond required by Article XVIII because it conformed in every respect with that Article and no other, and that another bond equally specific in its application under paragraph 5 of Miscellaneous Provisions was, or would be, given unless waived by the government. It does not appear in the plaintiff's statement of claim that a bond to protect materialmen was not given under paragraph 5. If the sub-contractor had given a bond in terms

showing an intention at the same time to comply with the requirements of Article XVIII (a performance bond) and of paragraph 5 of Sheet A (a payment bond), the case would probably be ruled by *Com. v. Great American Indemnity Co.*, 312 Pa. 183, 167 A. 793, and the other two cases cited above.

Apart from the terms of the bond itself, the sub-contract also indicates that the bond was not intended to assure payment of materialmen. Article X provided that the gross amount payable by the contractor to the sub-contractor was $150,000, subject, of course, to additions or deductions incidental to changes in construction; the bond in suit was accordingly given in that amount. Two provisions dealt with cancellation, one for breach and one for another contingency. Article VI dealt with cancellation for breach of contract, and provided what should be done if the sub-contractor defaulted. Article VII provided that the Turner Construction Company should have the right at any time to cancel the contract and to require the sub-contractor to cease work, provision being made for determining the amount then payable to the sub-contractor. In the event of cancellation under either Article, the contract imposed no liability for the sub-contractor's obligations to materialmen, nor authorized deduction of such obligations from the amount due the sub-contractor. The general contractor was not authorized to pay the materialmen with whom the sub-contractor dealt and to deduct such payments from the amounts payable to the sub-contractor.[6] Liability is imposed on the contractor to

---

[6] In *Lancaster v. Frescoln,* 203 Pa. 640, at 644, 53 A. 508, where a payment bond was authorized by ordinance, but not given and suit by a materialman was brought on the performance bond, it is said: "If the plaintiffs' theory of this case is correct and this bond could be used, as is claimed by them, what might have been the effect upon the city's rights? Suppose that, by reason of a failure of the contractor, the damages sustained by the city itself equalled, or almost equalled, the amount of the bond, and that, the contrac-

discharge sub-contractor's obligations to materialmen only in case of cancellation where the contractor stands in the sub-contractor's place and accepts delivery of material ordered by the sub-contractor before cancellation.

The same result follows from paragraph 7 of Sheet A. It is entitled "TERMINATION FOR BREACH" and provides as follows: "In the event that any of the provisions of the foregoing paragraphs 1 to 6 inclusive, are violated by the Contractor or by any Sub-contractor, the Owner may, and upon request of the Government shall, terminate the contract of such Contractor or Subcontractor by serving written notice upon such Contractor or Subcontractor, as the case may be, of its intention to terminate such contract, and, unless within ten days after the serving of such notice, such violation shall cease, such contract shall, upon the expiration of said

---

tor having also failed to pay his labor and materials, the aggregate amount of both claims more than equalled the amount of the bond. Could it be claimed, for a moment, that laborers and materialmen could recover on the bond to the detriment of the city itself? Or, in case such laborers and materialmen, as their claims became due, sued on the bond for their own benefit, could they thus have exhausted it, to the peril of the city, in case of default by the contractor in fulfilling the terms of his contract? Under no circumstances could the surety be called upon for more than the amount of his bond, and, under such conditions, who would be entitled to reap the benefit of it? It is not a sufficient answer to these questions to say that this state of affairs is never likely to arise. No one, as to the future, can make absolute prophecy, and we but illustrate what could happen—it being the unexpected—if the use-plaintiffs' theory of this case be the true one. We are not dealing here with probabilities nor improbabilities, but simply with the legal rights of the parties claiming on a bond given, under its strict terms, for the city's benefit, and that alone. It is obvious that the purpose of the city, both in spirit and letter, was only to protect its own rights." Though this was said prior to *Com. v. Great American Indemnity Co.,* 312 Pa. 183, 167 A. 793, the same reasoning is applicable in ascertaining the intention of the parties to the bond; see also *Fosmire v. National Surety Co.,* 229 N. Y. 44, 127 N. E. 472; *Strong v. American Fence Construction Co.,* 245 N. Y. 48, 156 N. E. 92.

ten days, cease and terminate. In the event of such termination the Owner may take over the work and prosecute the same to completion or otherwise for the account and at the expense of the Contractor and/or such Subcontractor, and the Contractor and his sureties (if any) shall be liable to the Owner for any excess cost occasioned to the Owner in the event of any such termination and the Owner may take possession of and utilize in completing the work, such materials, appliances, and plant as may be on the site of the work, and necessary therefor. This clause shall not be construed to prevent the termination of the Construction Contract or any subcontract for other causes provided therein respectively."

Plaintiff is not aided by the suggestion that if a performance bond only was given there was a breach of contract because a payment bond was not also given; the question would still remain whether materialmen, though deprived of the protection of a payment bond, were within the terms of the performance bond. Paragraph 7 shows that the parties did not intend the bond to be so construed because they specified what should happen for the breach. They provided for termination of the contract for the violation, among others, of paragraph 5 and agreed that the owner could take over and complete the work at the expense of the contractor or sub-contractor and that the surety should be liable for the excess cost to the owner. This conclusion is also supported by provisions in the General Conditions, Exhibit C to the statement of claim, e. g. Article XXII.

As two bonds were required, (unless the payment bond was waived) and as the phraseology of the bond in suit clearly conformed to Article XVIII and not to the other provision, the parties in executing the bond must have intended that it should be construed only as a bond for performance by the sub-contractor of his obligations to the general contractor. If the parties had intended to include materialmen as parties to be bene-

fited, a few additional words would have expressed the agreement as was done in the three cases referred to above; the court may not make a new contract for the parties.

Appellant's learned counsel, stating that he found no case in Pennsylvania holding in accord with his contention, referred to cases decided in other states said to furnish support for his view. We have examined these but do not find them persuasive. *Hollerman Mfg. Co. v. Standard Accident Ins. Co.*, 61 N. D. 637, 239 N. W. 741, in which the bond was substantially in the form of the bond in this case, was stressed. But the contract in that case contained a provision that the bond must not only provide for faithful performance of the contract but also that the contractor must "pay all persons who have contracts directly with the principal for labor or materials." Cases like *Hartford Accident, etc., Co. v. Knox, etc., Co.*, 150 Md. 40, 132 A. 261, and *Byram Lumber & Supply Co. v. Page*, 109 Conn. 256, 146 A. 293, dealt with bonds for performance and for payment, expressly providing that the surety "shall pay all persons who have contracts directly with the principal for labor or material."

The judgment is affirmed.