Augustus C. FROMMEYER, Charles M. Foley, and Joseph E. Murphy, co-partners doing business as Frommeyer and Company, a partnership, and United States of America for the use of Augustus C. Frommeyer, Charles M. Foley and Joseph B. Murphy, co-partners doing business as Frommeyer and Company, a partnership, Plaintiffs,

v.

L. & R. CONSTRUCTION CO., Inc., a corporation, American Surety Company of New York, a corporation, Wortmann & Sons, Inc., a corporation, and Seaboard Surety Company, a corporation, Defendants.

Civ. A. No. 851–55.

United States District Court
D. New Jersey.
March 27, 1956.

Howard K. Shaw, Trenton, N. J., for defendant American Surety Co., and Swartz, Campbell & Henry, Philadelphia, Pa., by Herbert A. Barton, Philadelphia, Pa., of counsel, for the motion.

Minton, Dinsmore & Lane, Trenton, N. J., for plaintiffs. Henry Stuckert Miller, Norristown, Pa., of counsel, and Victor Ruskin, Jersey City, N. J., for defendants Wortmann & Sons, Inc., and Seaboard Surety Co. contra.

FORMAN, Chief Judge.

The complaint in this case alleges, among other things, that:

On January 28, 1953 the defendant Wortmann & Sons, Inc. entered into a contract as prime contractor with the United States for the construction of Air Force Bachelor Officers Quarters at the McGuire Air Force Base at Wrightstown, New Jersey. Wortmann gave both the payment and performance bonds required by the Miller Act [1] with itself as

---

1. The Miller Act, 40 U.S.C.A. §§ 270a to 270d, provides in pertinent part:

§ 270a.

"(a) Before any contract, exceeding $2,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person, who is hereinafter designated as 'contractor':

"(1) A performance bond with a surety or sureties satisfactory to the officer awarding such contract, and in such amount as he shall deem adequate for the protection of the United States.

"(2) A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person. Whenever the total amount payable by the terms of the contract shall be not more than $1,000,000 the said payment bond shall be in a sum of one-half the total amount payable by the terms of the contract. Whenever the total amount payable by the terms of the contract shall be more than $1,000,000 and not more than $5,000,000, the said payment bond shall be in a sum of 40 per centum of the total amount payable by the terms of the contract. Whenever the total amount payable by the terms of the contract shall be more than $5,000,000 the said payment bond shall be in the sum of $2,500,000."

§ 270b.

"(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract,

principal, the United States as obligee and the defendant Seaboard Surety Company as surety.

Subsequently, Wortmann entered into a subcontract with the defendant L. & R. Construction Company whereby L. & R. bound itself to do all concrete work for the project. Wortmann exacted the following bond from L. & R.:

"Know all Men by these Presents, That we L & R Construction Co., Inc. of Camden, New Jersey called the Principal, and American Surety Company of New York, called the Surety, are held and firmly bound unto Wortmann & Sons of New York City called the Owner, in the sum of One hundred ninety nine thousand dollars ----------- Dollars ($199,000.00), for the payment whereof said Principal and Surety bind themselves firmly by these presents.

"Whereas, the Principal has, by written Agreement, dated March 11, 1953, entered into a contract with the Owner for Furnishing of concrete work and installation of reinforcing steel in connection with construction of Air Force quarters McGuire Air Force Base, Wrightstown, New Jersey."

a copy of which is by reference made a part hereof;

"Now, Therefore, the condition of this obligation is such, that if the Principal shall faithfully perform the contract on his part, free and clear of all liens arising out of claims for labor and materials entering into the construction, and indemnify and save harmless the Owner from all loss, cost or damage which he may suffer by reason of the failure so to do, then this obligation shall be void; otherwise to remain in full force and effect."

L. & R. then subcontracted with a partnership, Frommeyer and Company, plaintiff herein, in an agreement in which the plaintiff promised to furnish labor and supply materials on the project. It is alleged that L. & R. has defaulted in payment under its contract with the plaintiff, which has brought this suit joining as defendants Wortmann and Seaboard Surety in an exercise of the right of action given by the Miller Act; L. & R. Construction Company in an action founded on the contract between L. & R. and the plaintiff; and the American Surety Company in an action on the bond the terms of which are set forth above.

American has moved to dismiss the complaint as to it on the ground that, regardless of the liability of L. & R., it cannot be sued on the bond by anyone other than Wortmann. The specific argument is that the promise in the bond to pay money is solely a promise made to Wortmann and that American makes no promise that can be construed as giving a right of action on the bond to one not a party to it. The bond, it is said, exists for the single benefit of Wort-

---

in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: *Provided, however*, That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. * * * "

mann, and not for the benefit of suppliers of L. & R.[2]

We may begin with the Restatement of Security. Section 165 provides:

"Where a surety for a contractor on a construction contract agrees in terms with the owner that the contractor will pay for labor and materials, or guarantees to the owner the promise of the contractor to pay for labor and materials, those furnishing labor or materials have a right against the surety as third party beneficiaries of the surety's contract, unless the surety's contract in terms disclaims liability to such persons."

It is obvious that American's bond is not covered by this section. American has not agreed with Wortmann that L. & R. will pay for labor and materials, nor has it guaranteed a promise of L. & R. to pay those furnishing labor and materials, since neither the bond nor any of the agreements it incorporated by reference contains such a promise attributable to L. & R. Thus, the agreements presently involved in this case meet none of the conditions section 165 imposes as necessary prerequisites to the right of laborers and materialmen to sue the contractor's surety on the latter's bond.

Section 166 of the Restatement defines the conditions under which the right of a supplier to sue a contractor's surety does *not* exist. It provides:

"Where a surety guarantees the performance of a contract by a contractor who does not promise the owner to pay those furnishing labor or materials but agrees to complete the work free of liens or to furnish labor and materials, laborers and materialmen have no rights against the surety."

Equally as obvious as the inapplicability of section 165 is the applicability of section 166. American has not promised Wortmann to pay laborers and materialmen but did agree to complete the contract free and clear of all liens. If the Restatement is to govern, this promise by American gives the plaintiffs no right of action against it.

Professor Corbin has stated the principles controlling interpretation of contractors' surety bonds as follows:

"In the case of a surety bond given to an owner to assure performance of a building contract, the legal duties of the surety ought not to be expanded beyond the terms of the surety's promise. He is paid for his undertaking; but he is not paid for more than his undertaking. The extent of this undertaking is to be determined not only by the surety's words of express promise, but also by the 'condition' of the bond. Words of 'condition' are not words of 'promise' in form; but in the case of a penal bond they must be construed to be words of promise inasmuch as the only express words of promise are those in which payment of the penal sum is promised. The alternative seems to be between enforcing the penalty and construing the words of condition as a promise and enforcing that. The courts have adopted the latter alternative, penalties no longer being collectible. A bond conditioned to be void on fulfillment by the principal contractor

2. American's bond incorporates by reference the terms of the contract between Wortmann and L. & R. A copy of this contract has been submitted to the court, but it contains no statements that can possibly be construed as a promise by L. & R. to Wortmann that L. & R. will pay money to its suppliers of labor and materials. Hence, it cannot be argued that American, in guaranteeing performance of the Wortmann-L. & R. contract, was guaranteeing a promise to pay money to the plaintiff. The contract between Wortmann and L. & R. also incorporates "the terms and conditions of the prime contract" insofar as they are applicable. The prime contract has not been placed before the court, but a copy of it has been examined by the plaintiff's counsel and he admits that it does not contain any language helpful in determining the rights of the parties on this motion to dismiss. Thus, decision on the motion depends exclusively upon the proper construction of the language of the bond.

of all of his duties is operative as a promise either that all those duties will be performed or that the promisee will be indemnified within the limit of the penalty in case of non-performance. The cases denying a remedy to third persons on a private surety bond nearly always interpret it as exclusively the latter promise and rest the decision on that ground." 4 Corbin on Contracts § 800, pp. 173–174.

" * * * the third party has an enforceable right if the surety promises in the bond, either in express words or by reasonable implication, to pay money to him. If there is such a promissory expression as this, there need be no discussion of 'intention to benefit'. We need not speculate for whose benefit the contract was made, or wonder whether the promisee was buying the promise for his own selfish interest or for philanthropic purposes. It is a much simpler question: Did the surety promise to pay money to the plaintiff?" 4 Corbin on Contracts § 798, pp. 163–164.

"If on a reasonable interpretation the surety bond contains no promise to pay laborers and materialmen, of course they have no right against the surety." 4 Corbin on Contracts § 800, p. 175.

The cases that have been brought to the court's attention amply support the accuracy of the interpretative doctrine advocated by the Restatement and Professor Corbin. Their view is now by far the "weight of authority". If there is any departure from these rules of construction it is in the direction of depriving the third-party of a right to sue the surety on the bond. See annotations in 77 A.L.R. 21 and 118 A.L.R. 57.

The parties agree that New Jersey law controls. And the New Jersey authorities, though few, are squarely against plaintiff. Standard Gas Power Corp. v. New England Casualty Co., 90 N.J.L. 570, 101 A. 281 (E. & A. 1917); followed in Mitchell v. Hasbrouck Const.

Co., 1 N.J.Misc. 498 (Bergen Cty.Cir., 1923), and Skillman v. United States Fidelity & Guaranty Co., 101 N.J.L. 511, 130 A. 564 (E. & A. 1925). In the Standard Gas case [90 N.J.L. 570, 101 A. 282], the bond was expressly conditioned upon the duty of the principal to "pay for all labor performed and furnished and for all materials used in carrying out (the) contract". Despite these words the bond was construed as one of indemnity only, and an unpaid materialman was forbidden to sue the surety. The Mitchell and Skillman cases follow the Standard Gas holding in slightly different factual settings.

Both the Standard Gas and Skillman cases involved what are called public bonds, that is, bonds required to be given by statute or ordinance in the construction of public buildings. Public bonds may be subdivided into two categories: (a) those in which the language is no different from an ordinary private bond except that they guarantee performance of contracts providing for construction of public buildings and (b) those given pursuant to a statute expressly granting laborers and materialmen a right to sue, as in the Miller Act bonds and the bond involved in J. Jacob Shannon & Co. v. Continental Casualty Co., 106 N.J.L. 200, 148 A. 738 (E. & A. 1930). Courts have sometimes tended to be more liberal in their construction of public bonds falling in category (a) above because of the impossibility of a laborer or materialman attaining a lien against a public building, than they have been in construing an identically-worded private bond, covering a project on which the unpaid laborer or materialman had a remedy by way of lien. The principle of strict construction, applied by the New Jersey cases, has largely disappeared elsewhere with the advent of the paid surety, and, in any event, there can be no justification for a different construction of the same bond depending upon the existence or non-existence of other remedies exercisable by the claimant. An interesting case is Fidelity & Deposit Co. of Baltimore, Md. v. Rainer, 1929,

220 Ala. 262, 125 So. 55, 77 A.L.R. 13, where the Supreme Court of Alabama, on rehearing, reversed itself on this very point. Compare McGrath v. American Surety Co. of New York, discussed infra.

The New Jersey decisions, though they govern this case, seem to be out of line with the presently prevailing weight of authority. However, it can be demonstrated that even under the more liberal majority rule the plaintiff has no right to sue American on its bond.

The Pennsylvania cases, cited by both parties, are a clear demonstration that the liability of a surety directly to unpaid laborers and materialmen depends upon the existence or non-existence of words in the bond or incorporated in it that reasonably can be construed as a promise by either surety or principal to pay money to them. In Fleck-Atlantic Co. v. Indemnity Ins. Co., 1937, 326 Pa. 15, 191 A. 51; Commonwealth v. Fidelity & Deposit Co., 1947, 355 Pa. 434, 50 A.2d 211, and Dravo-Doyle Co. v. Royal Indemnity Co., 1952, 372 Pa. 64, 92 A.2d 554, the plaintiffs were unpaid materialmen or analogous thereto and were denied the right to sue the surety. In each case there was a performance bond conditioned upon performance of the contract by the principal. But in none of these three cases was there language either in the bond or in the contract it guaranteed which could reasonably be construed as an express promise by either principal or surety to pay money to the plaintiffs. And in the Dravo-Doyle case the Pennsylvania Supreme Court quoted and relied on section 166 of the Restatement of Security.

On the other hand, in City of Pittsburgh to Use of H. M. Kamin Agency v. Parkview Const. Co., 1942, 344 Pa. 126, 23 A.2d 847; Pennsylvania Supply Co. v. National Casualty Co., 1943, 152 Pa.Super. 217, 31 A.2d 453, and Pennsylvania Turnpike Commission to Use of Weiss v. Andrews & Andrews, 1946, 354 Pa. 138, 47 A.2d 220, the plaintiffs were permitted to maintain their suits against the surety. In each case there were words of express promise in the bond or underlying contract that persons in the positions of the plaintiffs would be paid. The Delaware Supreme Court has held in accord with these three cases. In Wilmington Housing Authority for Use of Simeone v. Fidelity & Deposit Co., 1946, 4 Terry 381, 43 Del. 381, 47 A.2d 524, 170 A.L.R. 1288, an unpaid laborer was permitted to sue the surety where the bond's words of "condition" were that the principal should pay all laborers and materialmen.

However, the principle that dictates the "search for a promise" which characterizes the foregoing cases was not followed in New York. There the right of a third party to sue on bonds such as the one involved here depends upon the existence of an "intention to benefit". In McGrath v. American Surety Co. of New York, 1954, 307 N.Y. 552, 122 N.E.2d 906, an unpaid supplier of labor and materials was forbidden to maintain suit against the subcontractor's surety, even though the bond in the plainest of language was conditioned upon payment of laborers and materialmen. The Court reasoned that since the plaintiff had rights under the Miller Act which were existent at the time the defendant gave its bond, the parties to that bond had no intention to enlarge the plaintiff's Miller Act rights.

Subsequently, the New York Court of Appeals had a case before it substantially identical with the McGrath case, except that the Miller Act was in no way involved. Daniel-Morris Co. v. Glens Falls Indemnity Co., 1955, 308 N.Y. 464, 126 N.E.2d 750. There the plaintiff, an unpaid materialman, was allowed to sue a subcontractor's surety on a bond conditioned upon payment by the subcontractor to laborers and materialmen. The McGrath case was distinguished on the presence in that case of Miller Act rights which might have been asserted by the plaintiff. There were, however, two bonds, a payment and a performance bond. Since the prime contractor was fully covered by the performance bond the court could find no justification for

the payment bond other than a desire to benefit those in the position of plaintiff. Accordingly the plaintiff was permitted to recover from the subcontractor's surety.

The McGrath case was criticized by the Court of Appeals for the Second Circuit in Socony-Vacuum Oil Co. v. Continental Casualty Co., 2 Cir., 1955, 219 F. 2d 645. There the court was nominally applying Vermont law. But since the courts of that state had not yet spoken on this problem, the Second Circuit said that its task was

> "not to surmise which line of judicial precedent a Vermont court would follow if presented with the case, but rather, by looking to the same sources which a Vermont court would presumably consult and by weighing the comparative reasoning of learned authors and conflicting judicial decisions for their intrinsic soundness, to define the pertinent law which when thus ascertained is presumably the law of Vermont even though as yet unannounced by the Vermont Court." 219 F.2d at page 647.

The court then went on to quote approvingly from Professor Corbin's treatise and to hold, in a situation legally indistinguishable from the McGrath case, that an unpaid materialman of a subcontractor could sue the subcontractor's surety on a bond expressly conditioned upon the payment of laborers and materialmen by the principal despite the presence of Miller Act rights which the plaintiff once could have asserted.

Thus, among New Jersey and the three jurisdictions surrounding her can be found the gamut of judicial views concerning the interpretation of this type of contractor's surety bond. They are (1) the New Jersey view of strict construction of a surety's undertaking—a construction so strict that it ignores language which the majority of courts would find to be words of express promise by the surety to pay the plaintiff; (2) the New York search for an "intention to benefit" to be gleaned from the words of the bond and the circumstances surrounding its origin; and (3) the rule followed in Pennsylvania and Delaware which simply looks for a promise to pay third parties within the four corners of the bond and any instruments incorporated in or guaranteed by it, which was also the rule adopted by the Second Circuit in dealing with a bond controlled by Vermont law.

Obviously, this plaintiff cannot sue American under the strict construction rule followed by the cited New Jersey cases. Nor could it maintain this suit under the New York rule because here, as in the McGrath case, the presence of rights under the Miller Act would foreclose a finding that the parties to the bond at the time of its execution intended to benefit unpaid laborers and materialmen. And it is equally clear that plaintiff cannot sue under the Pennsylvania cases, which it presses, because of the absence in American's bond or in the underlying contract of a promise to pay plaintiff for the default of L. & R. The motion to dismiss the complaint as to the American Surety Company must be granted.

■ A procedural point remains. Defendants Wortmann and Seaboard Surety have cross-claimed against American on the bond. American protests that these cross-claims were prematurely filed and asks that they be dismissed with leave to Wortmann and Seaboard to reinstate these same claims by way of third-party complaints. Wortmann and Seaboard assert that if forced to withdraw their cross-claims an attempt to reinstate them in another form might well be precluded because the time within which the bond specifies Wortmann may sue has expired. However, this question need not be decided. The point American makes is perhaps novel, but not difficult. The aim of procedural rules is facilitation not frustration of decisions on the merits.

Rule 13(g) of the Fed.Rules Civ.Proc. 28 U.S.C., provides that:

> "A pleading may state as a cross-claim any claim by one party

against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant."

There can be no doubt that had American not been a co-party at the time the cross-claims were made it could have been made a third-party defendant under Rule 14. But because it was a co-party of Wortmann and Seaboard at the time, the cross-claims were proper. Once proper, they did not cease to be so because the party to whom they were addressed subsequently ceased to be a co-party. This result is clearly contemplated by the language of Rule 13(g). The cross-claims against American may stand as such.

Orders should be submitted in conformity herewith by counsel for American and for Wortmann and Seaboard.