**ATLANTIC REFINING COMPANY**

v.

**CONTINENTAL CASUALTY COMPANY, Joseph M. Smith, and Greensburg Concrete Block Company, Defendants and United States of America, Intervenor.**

**Civ. A. No. 15185.**

United States District Court
W. D. Pennsylvania.

April 7, 1960.

Robert A. Rundle, of Wright & Rundle, Pittsburgh, Pa., for plaintiff.

J. M. McCandless, Pittsburgh, Pa., for defendant, Continental Cas. Co.

Daniel J. Snyder, Asst. U. S. Atty., Pittsburgh, Pa., for the United States, intervenor.

MARSH, District Judge.

The facts as disclosed by the pleadings and stipulated by the parties, except as hereinafter specified, are adopted by the court as if found pursuant to Rule 52, Fed.R.Civ.P., 28 U.S.C.

Atlantic Refining Company, hereinafter called the Owner, on November 8, 1954 and May 16, 1955 entered into two no-lien construction contracts with Joseph M. Smith, hereinafter referred to as Contractor, to furnish labor and materials for the construction of two service stations located, respectively, in Mt. Pleasant, Westmoreland County, Pennsylvania, and Connellsville, Fayette County, Pennsylvania. The contracts were filed of record in the respective counties before visible commencement of work was begun on the ground. A construction and payment bond furnished by Continental Casualty Company, hereinafter referred to as Surety, accompanied each contract.

The Contractor completed the construction of the service stations but failed to pay certain materialmen on each job. As of November, 1956, the balance withheld by the Owner on the contract price was $6,027.68 for the Mt. Pleasant station and $6,626.26 for the Connellsville station, or a total of $12,653.94.

Previously, the United States Internal Revenue Service served on Owner notice of levy and demand for certain taxes owed by the Contractor, assessed in July and December of 1955 and noticed and filed of record on October 28, 1955 and December 30, 1955. The total amount of the assessments was $11,632.06, plus interest, of which sum $1,114.81 was incurred by the Contractor in erecting the two service stations aforementioned.

Greensburg Concrete Block Company, a judgment creditor of the Contractor, served a writ of attachment execution on the Owner, as garnishee, attaching the fund allegedly due to the Contractor to satisfy its judgment of $737.65, with interest and costs.

The Surety claimed the balances withheld on the contract prices by reason of its liability on the bonds to unpaid materialmen.

Faced with these conflicting claims, the Owner on November 15, 1956 filed a "Complaint for Interpleader and Declaratory Relief" against the United States, the Surety Company, Greensburg Concrete Block Company, and the Contractor, and thereupon paid $12,653.94 into the registry of this court.

A default judgment was entered against Contractor Smith and Greensburg Concrete Block Company for failure to appear, answer or plead, and the Owner was discharged from any claim that they might assert against the funds paid into court.

The complaint was dismissed as to the United States, and the United States was permitted to intervene as a party plaintiff. The government's complaint in intervention alleges that the Contractor is indebted to it for certain withholding and F.I.C.A. taxes in the sum of $11,-632.06, plus interest, and claims by virtue of the 1955 assessments that it has a prior lien on the fund allegedly due to the Contractor from the Owner. Hence,

it demands the funds paid into court by Owner.

By amendment to its complaint, the government also sues the Surety directly on the bonds for all withholding and F.I.C.A. taxes due it from the Contractor in the sum of $11,632.06, plus interest. This suit, however, is pressed only for the sum of $1,114.81, plus interest, that amount being the withholding and F.I.C.A. taxes incurred by the Contractor in the construction of the service stations at Mt. Pleasant and Connellsville (see government's brief, pp. 32–34).

After the fund was paid into court, the Surety paid claims of materialmen on the Mt. Pleasant station in the sum of $6,004.51, leaving a balance of $23.17 unclaimed except by the United States. The Surety paid claims of materialmen on the Connellsville station in the sum of $12,285.53. The Surety took assignments from the materialmen which it paid.

The Surety presses its claim on the following grounds:

(1) The Contractor had no property or property interest in the fund upon which the government liens might attach.

(2) The Surety is subrogated to the rights of the Owner and materialmen in the fund created by the contract between the Owner and the Contractor.

(3) The Surety is entitled to the fund under equitable assignments given by the Contractor to the Surety at the time of the execution of the bonds.[1]

In my opinion the Surety is entitled to the fund on the first ground, and on the second ground, i. e., because it is subrogated to the rights of the Owner. It is, therefore, unnecessary to discuss the third ground, although I am of the opinion that the Surety's contentions with respect to the effect of its equitable assignments would not succeed against the federal liens.[2]

---

1. See assignments contained in applications for bonds.

2. See: United States v. R. F. Ball Construction Co., 1958, 355 U.S. 587, 78 S. Ct. 442, 2 L.Ed.2d 510; United States v. White Bear Brewing Co., 1956, 350

The provisions of the contracts between the Owner and the Contractor are identical except for description of work and prices.

The pertinent provisions thereof are as follows:

(1) "Contractor shall, during the progress of the work, pay all valid charges of all his sub-contractors and other persons furnishing labor and/or materials in the performance or prosecution of the work * * * when and as such charges become payable and in their full amount."

(2) "When the contract has been completed, the Contractor shall deliver to the Owner a full Release of Liens signed by himself and all sub-contractors and other persons who have furnished any materials, labor, or both, in the performance of the contract or prosecution of the work. * * * Such release, with accompanying affidavits, shall be in such form as the Owner may require and its presentation to Owner shall constitute a representation by Contractor that all sub-contractors * * * have joined in the proper execution thereof as having been paid. * * * Until such releases and affidavits are delivered properly executed, the final schedule of payments may be withheld."

(3) "*Waiver of Liens and Claims:* * * * In the event that notice is given of any claim * * * which is chargeable to the Contractor * * * the Owner shall have the right to retain out of any payment then due, or to become due, an amount sufficient to completely indemnify the Owner against such claim. * * * In the event of

U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871; United States v. Colotta, 1955, 350 U.S. 808, 76 S.Ct. 82, 100 L.Ed. 725; United States v. Security Tr. & Sav. Bk., 1950, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53.

* * * [the Contractor's] failure to have such claims * * * paid * * * the Owner shall have the right to take such action as is necessary to have the same done, charging the cost thereof * * * to the Contractor."

(4) "The Owner shall retain ten percent (10%) pending completion of the job and full compliance with the contract. * * * The final payment shall be made within thirty (30) days after final test and acceptance of the work, provided the Contractor shall have submitted to the Owner a satisfactory Release of Liens showing that all claims and bills for labor and material have been met and paid as hereinbefore provided."

The surety bonds are identical in their material provisions. Each contract was incorporated by reference in the accompanying bond.

Each bond was conditioned upon faithful performance of the contract and upon prompt payment of all just charges for labor and material furnished by Contractor.

No release of liens was furnished the Owner by the Contractor with respect to either job as required by both contracts. The Owner withheld the balances due on the contract prices and interpleaded the claimants thereto.

**The Contractor Does Not Have Any Property or Rights to Property in the Withheld Balances of the Contract Prices Upon Which the Liens for Federal Taxes Might Attach.**

The United States bases its claim to the fund on §§ 6321 and 6322 of the Internal Revenue Code of 1954.[3]

3. Section 6321, 26 U.S.C.A., provides as follows:
"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any

482

As therein provided "if any person liable to pay any tax neglects or refuses to pay same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property * * * belonging to such person."

It was held in United States v. Bess, 1958, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 that "* * * § 3670 [now 26 U.S.C.A. § 6321] creates no property rights but merely attaches consequences, federally defined, to rights created under state law", citing Fidelity & Deposit Co. of Md. v. New York City Housing Authority, 2 Cir., 1957, 241 F. 2d 142, 144. As stated in Morgan v. Commissioner, 1940, 309 U.S. 78, 80, 626, 60 S.Ct. 424, 426, 84 L.Ed. 585, 1035: "State law creates legal interests and rights."

As of the dates the federal liens were assessed (1955), the Contractor was not entitled to receive any money under the terms of the contract, for the Contractor owed materialmen on both jobs. On the Mt. Pleasant job the unpaid amount was practically equivalent to the amount withheld by the Owner, and on the Connellsville job the amount was substantially in excess of the amount withheld.

It must now be determined under the Pennsylvania law whether the Contractor had any "property" or "rights to property" in the balances withheld from the Owner and paid by it into court. Cf. Central Surety and Insurance Corp. v. Martin Infante Co., 3 Cir., 1959, 272 F.2d 231.

█ It is a general principle that a material failure of performance by one party to a contract not justified by the

conduct of the other discharges the latter's duty to give the agreed exchange. Sections 274 and 275, Restatement, Contracts, with which Pennsylvania law is in accord; Wright v. Barber, 1921, 270 Pa. 186, 113 A. 200; City of Farrell to Use of Milarr v. H. Platt Co., 142 Pa. Super. 242, 15 A.2d 718; vol. 8 P.L.E. § 301; Sum.Pa.Jur. Contracts, § 498; cf. vol. 4, Corbin on Contracts, § 901. Also in accord are cases in other jurisdictions involving contracts providing for the payment of labor and materialmen as a prerequisite for payment of the contract price. Central Surety & Insurance Corp. v. Martin Infante Co., supra; Fidelity & Deposit Co. v. New York City Housing Auth., supra; United States Fidelity & Guaranty Co. v. United States, 10 Cir., 1952, 201 F.2d 118; Wolverine Insurance Co. v. Phillips, D.C. N.D.Iowa W.D.1958, 165 F.Supp. 335; United States Fidelity and Guaranty Co. v. Miller, D.C.W.D.N.C.1956, 143 F. Supp. 941; Scott v. Zion Evangelical Lutheran Church, 1955, 75 S.D. 559, 70 N.W.2d 326; United States Fidelity & Guaranty Co. v. Triborough Bridge Authority, 1947, 297 N.Y. 31, 36–37, 74 N.E.2d 226, 228.

In the cited cases it was held that the tax liens of the United States did not attach to the withheld funds; and the sureties and, in one case, the materialmen, won the money. In at least four of the cases, it seems that the contractors had completed or substantially completed the work for the owners,[4] the contractual breach being their failure to pay materialmen.

Therefore, I am of the opinion that a failure by the Contractor here to pay for labor and materials is just as much a

costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Section 6322, 26 U.S.C.A., provides as follows:

"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until

the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time."

4. Fidelity & Deposit Co. v. New York City Authority, supra; United States Fidelity & Guaranty Co. v. United States, supra; United States Fidelity and Guaranty Co. v. Miller, supra; United States Fidelity & Guaranty Co. v. Triborough Bridge Authority, supra.

failure to perform and carry out the terms of the contract as an abandonment of the work would have been.

Since the Contractor failed to pay the materialmen in amounts almost equal to or in excess of the balances withheld on the contract prices, express promises of the Contractor to the Owner to pay materialmen were materially breached by these substantial failures. Consequently, except for $23.17, the Contractor had no right of property in the balances withheld by the Owner; he could "not get" the withheld balances, Lancaster County Nat. Bank's Appeal, 304 Pa. 437, 155 A. 859; he had "no rights whatever" to the said balances, Prairie State National Bank of Chicago v. United States, 1896, 164 U.S. 227, 17 S.Ct. 142, 144, 41 L.Ed. 412.

In Lancaster County Nat. Bank's Appeal, supra, the construction contract, as here, required the contractor to pay the materialmen. Being a contract for public work, it was, as here, in effect, a no-lien contract. On page 861 of 155 A., it was stated:

"[A]s it [the assignee of the contractor] was claiming the right to receive a sum payable to the contractor, under the terms of the contract, it was bound to take notice also of the fact that *the contractor could not get the semifinal estimate*, which is the one in controversy here, until and unless all 'claims for labor and materials [incurred in the performance of the contract] have been satisfactorily settled,' * * *." (Emphasis supplied.)

Likewise, in Prairie State National Bank of Chicago v. United States, supra, with which it has been declared the Pennsylvania law is "in harmony", Sundheim v. Philadelphia School District, 1933, 311 Pa. 90, 166 A. 365, it was stated at page 232 of 164 U.S., at page 144 of 17 S.Ct.:

"A great deal of confusion has arisen in the case by treating [the surety] as subrogated merely 'in the rights of [the contractor]' in the fund, which, in effect, was saying that he was subrogated *to no rights whatever*." (Emphasis supplied.)

Thus when perfected in 1955, the lien of the government's taxes bound a contingent right of the Contractor to receive the balance of the contract prices if, but only if, he substantially performed his direct contractual obligations to the Owner to pay the materialmen. After his material breaches, the Contractor's contingent right never ripened into a "right to property" which he could enforce or on which the federal tax liens could attach.

■ It is " * * * well settled that the lien of federal taxes extends only to property in which the taxpayer has an interest." United States v. Burgo, 3 Cir., 1949, 175 F.2d 196, 198. "Since the government's rights under Sections 6321 and 6322 can rise no higher than the rights of the taxpayer, there was nothing of Infante's [the contractor's] to be levied upon." Central Surety and Insurance Corp. v. Martin Infante Co., supra, 272 F.2d at pages 234–235.

Adapting Mr. Justice Brennan's statement in United States v. Bess, supra, 357 U.S. at pages 55, 56, 78 S.Ct. at pages 1057, 1058, it would be anomalous to view as "property" subject to lien, money never within the Contractor's reach to enjoy.

In the instant case, I conclude that the Contractor had no "property" or "right to property" in the withheld balances which the Owner paid into court, and, therefore, there was nothing to which the government's lien could attach.

The Surety is Subrogated to the Rights of the Owner in the Withheld Balances.

■ Having determined that the United States does not have a lien on the withheld balances, it seems certain that the Surety is entitled to recover the fund paid into court.

However, the government strenuously argues that in no-lien contracts where the work is completed by the Contractor,

the Surety cannot be subrogated to the rights of the materialmen or the Owner, but only to the rights of the Contractor, which rights, of course, are subject to the government's tax liens. I am of the opinion that under Pennsylvania law the Surety can be, and is, subrogated to the rights of the Owner, and is thus entitled to the fund in which the Contractor, as shown, has no property rights.

■ It is established in Pennsylvania that upon elementary principles a surety is entitled to assert the equitable doctrine of subrogation to funds in the hands of the owner where there is a direct contractual obligation *to the owner*, as a party to the contract, binding upon the contractor and the surety to pay materialmen when the contractor breaches the contract by failing to pay the materialmen. In such circumstances, the surety is entitled to be *subrogated to the rights of the owner* in the retained balances. Subrogation arises from the owner's right to have the original contract performed according to its terms. When the surety pays the materialmen, it stands in the position of a surety who not only has completed the contractual obligations of the defaulting contractor, but also has carried out the equitable obligations of the owner to see that the materialmen are paid. Sundheim v. Philadelphia School District, supra. (Compare with similar cases in other jurisdictions, see footnote 4.)

In Henningsen v. United States Fidelity & Guaranty Co., 1907, 208 U.S. 404, 411, 28 S.Ct. 389, 392, 52 L.Ed. 547, where the contractor promised the owner to pay materialmen, it was held that the surety was "entitled to assert the equitable doctrine of subrogation", citing Prairie State National Bank of Chicago v. United States, supra. And in Lancaster County Nat. Bank's Appeal, supra, at page 861 of 155 A., "under precisely similar circumstances" to those in Henningsen, the Pennsylvania Supreme Court said: "With this statement of the law we are in complete accord.

* * *" (at page 862 of 155 A.)

In Sundheim v. Philadelphia School District, supra, at pages 367–368 of 166 A., the Supreme Court of Pennsylvania stated:

"Consequently, when the contractor fails to pay labor and materialmen, it is tantamount to a breach of its contract with the United States [the owner]. When this occurs and the surety pays the labor and materialmen, it stands in the position of a surety completing a contractual obligation of a defaulting contractor and performing an equitable duty to the United States. It [the surety] is therefore entitled to subrogation to the rights of the United States in the fund. *Subrogation does not arise through the contractor, but from the government's [the owner's] rights.* Prairie State Nat. Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; Henningsen v. United States Fid. & Guar. Co. of Baltimore, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; In re Scofield Co. (C.C.A.) 215 F. 45. In Pennsylvania, where our statutes and the facts coincide with the cases decided by the federal courts, we are *in harmony* with those decisions as illustrated by Lancaster County National Bank's Appeal, 304 Pa. 437, 155 A. 859, 861." (Emphasis supplied.)

In Prairie State National Bank of Chicago v. United States, supra, 164 U.S. at pages 232–233, 17 S.Ct. at page 144, it was stated:

"Hitchcock's [the surety's] right of subrogation, when it became capable of enforcement, was a right to resort to the securities and remedies which the creditor (the United States) [the owner] was capable of asserting against its debtor Sundberg & Company [the contractors], had the security not satisfied the obligation of the contractors; and one of such remedies was the right, based upon the original contract to appropriate the 10 percent. retained in its hands. * * * The right

of Hitchcock to subrogation, therefore, would clearly entitle him, when, as surety, he fulfilled the obligation of Sundberg & Company [the contractors], to the government [owner], *to be substituted to the rights which the United States [owner] might have asserted against the fund."* (Emphasis supplied.)

In Henningsen v. United States Fidelity & Guaranty Co., supra, 208 U.S. at page 410, 28 S.Ct. at page 391, it was stated:

. "It [the surety] paid the laborers and materialmen, and thus released the contractor from his obligations to them, and to the same extent *released the government from all equitable obligations to see that the laborers and supply men were paid."* (Emphasis supplied.)

That the owner-promisee has equitable obligations and rights in a donee beneficiary contract, as a promise to pay materialmen seems to be,[5] is pretty well established. Restatement, Contracts, § 138; Burnet v. Wells, 289 U.S. 670, 679–680, 53 S.Ct. 761, 71 L.Ed. 1439; Cove Irr. Dist. v. American Surety Co. of New York, 9 Cir., 1930, 42 F.2d 957; Williston on Contracts, rev. ed., §§ 358, 359; Corbin, Contracts, vol. 4, § 812.

Thus, Henningsen v. United States, supra, and Prairie State National Bank of Chicago v. United States, supra, pointed to in the Pennsylvania cases (Lancaster and Sundheim) as exemplifying the federal law with which Pennsylvania is in accord, clearly hold that in no-lien construction contracts,[6] the owner has an equitable obligation to see that the materialmen are paid, and when the surety has paid them, the surety is subrogated to the rights of the owner in the withheld balances as of the date of the original contract.

The rationale of the foregoing principles is well expressed in Corbin on Con-

tracts, vol. 4, § 901, pp. 609, 610, from which the following extracts are taken:

"If the surety claims by subrogation, his claim is not a 'latent equity' for the reason that he is being put into the position of the obligated owner, none of whose defenses and counterclaims can be described as 'latent'.

"The owner, in such a case as the above, is both an obligor and an obligee. His duty to pay is accompanied by a right to the performance promised in exchange for his money; his duty to pay is conditional upon performance by the builder. * * * In so far as the building contractor has not performed his part of the agreed exchange, he has no right to payment by the owner; and his assignee [lien creditor] has none. In so far as the agreed exchange has been performed at the surety's expense, under the compulsion of the surety bond, it has seemed fair and just to give to him that part of the payment that is dedicated to the agreed exchange; and it has seemed unjust to let either the contractor or his assignee [lien creditor] profit by the performance rendered under compulsion by the surety. This is the doctrine of subrogation of the surety to the position of the creditor. For, again be it noted, although the owner is a debtor (obligor) as to the promised payment, he is a creditor (obligee) as to full performance by the building contractor, and deferred payments are retained by him as security for such performance. * * *

"So, when the surety performs any of the contractor's duties to the owner, he is subrogated to the owner's right and securities against the principal contractor; and among these are included the deferred pay-

---

5. Williston on Contracts, rev. ed., vol. 2, § 372, p. 1085.

6. In all the cited cases the materialmen did not have the right to file mechanics' liens against public buildings.

ments and retained percentages in the owner's hands."

The contracts, sub judice, are explicit in providing that the final schedule of payments may be withheld from the Contractor (promisor) until proof satisfactory to the Owner (promisee) is delivered, in order to show the Owner that all claims of laborers and materialmen (beneficiaries) have been paid by the Contractor as promised.[7] Because no such proof was ever submitted and substantial amounts were due to materialmen, the Owner did withhold final payments. Thereupon the withheld balances became collateral security for the Owner and ultimately for the Surety when it performed its obligations under the bonds and paid the materialmen. Prairie State National Bank of Chicago v. United States, supra. I hold that the Surety is entitled to the fund.

> Payment by the Owner of the Withheld Balances Into Court Does Not Constitute a Waiver of the Surety's Right of Subrogation.

The government argues that when the Owner paid the withheld balances into court, it waived its right to withhold them and the Contractor's property rights to same were reinstated and hence the federal liens attach. I do not agree.

In Lancaster County Nat. Bank's Appeal, supra, at page 861 of 155 A., it is stated:

"* * * [T]he surety had an equity to insist that the secretary of the department 'withhold the payment of any semifinal or final estimate' until these claims were paid,

as by the contract itself he said he would do, and on the faith of which provision, inter alia, the surety executed the bond. Derby v. United States Fidelity & Guaranty Co., 87 Or. 34, 169 P. 500; Canton Exchange Bank v. Yazoo County, 144 Miss. 579, 109 So. 1."

Cf. Sum.Pa.Jur., Surety & Guarantor, § 139.

■■ The Owner, when it actually withheld the balances and paid them into court, waived any defenses it had against the claimants,[8] but it could not waive any right that the Surety might have to the withheld balances which are the security for the Contractor's performance. Interpleader does not affect the rights of the claimants or the merits of their respective claims inter se. Moore's Federal Practice, 2d ed., vol. 3, ¶ 22.07, pp. 3021–3022.

The Surety upon payment of the materialmen was entitled to insist that the withheld balances remain as its security,[9] and their payment into court by the Owner, the plaintiff in interpleader, did not divest the funds of their character as security. They did not ipso facto become the property of the Contractor.

> The United States Cannot Recover From Surety Unpaid Taxes of the Contractor Incurred in the Performance of Work Under the Contracts at Bar.

■ It remains to be determined whether or not the government is entitled to a judgment against Surety in the sum of $1,114.81, plus interest, be-

---

7. Although these contracts were "no-lien contracts", such provisions are consistent by affording the Owner extra protection against any possible liens that might be filed, as pointed out in Morris v. Ross, 1898, 184 Pa.St. 241, 38 A. 1084, and if just unpaid claims were demanded, the Owner certainly would be at least equitably obligated to pay them out of withheld funds if that became necessary. See contract provisions, designated as (3), quoted above.

8. Cyclopedia Fed.Proc., 3d ed., § 22.16, p. 607; Carter v. Thornton, 8 Cir., 1938, 93 F.2d 529.

9. In United States v. Munsey Trust Co., 1947, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022, it appears that the surety's right of subrogation is subject to the owner's counterclaims and set-offs against the contractor, including those arising under other contracts. The owner in that case was the United States who was not a disinterested stakeholder interpleading the fund as in the instant case.

ing the withholding and social security taxes attributable to the construction of the Mt. Pleasant and Connellsville service stations which the Contractor failed to pay.

In my opinion the claim should be denied.

■ It seems to be established that withholding and social security taxes due to the government from the Contractor are owing as taxes and not as wages. United States v. Crosland Const. Co., 4 Cir., 1954, 217 F.2d 275; Westover v. William Simpson Const. Co., 9 Cir., 1954, 209 F.2d 908; United States v. Zschach Const. Co., 10 Cir., 1954, 209 F.2d 347.

The pertinent portion of both contracts is as follows:

"With respect to all persons at any time employed by or on the payroll of the Contractor or performing any work for or on behalf or in connection with or arising out of his business, the Contractor shall indemnify the Owner against, and hereby accepts full and exclusive liability for the payment of, any and all contributions or taxes for unemployment insurance or old age retirement benefits, pensions or annuities or wage or income taxes, now or hereafter imposed by the Government of the United States, any State or political sub-division thereof, whether measured by the wages, salaries or other remuneration paid to such persons or the number of such persons or otherwise."

The pertinent condition of the bonds is that the Contractor

"(1) shall faithfully observe, perform and keep the said contract on the Principal's part to be observed, performed and kept, according to all its terms, covenants and conditions * * *."

The problem is one of interpreting the foregoing contractual provisions in order to determine whether the parties intended to benefit the United States and other taxing bodies by creating securities and remedies additional to their right to tax

liens and the ordinary statutory methods of collection.

■ With respect to interpreting construction contracts and bonds, the law of Pennsylvania is laid down as follows in Commonwealth v. Fidelity & Deposit Co., 1947, 355 Pa. 434, 50 A.2d 211, 212:

"'A bond given pursuant to a contract incorporated in the bond, will be construed in the light of the terms of the contract and the attendant circumstances, but "the obligation of a bond cannot be extended beyond the plain import of the words used". [City of] Lancaster v. Frescoln, 192 Pa. 452, 457, 43 A. 961, 962; [City of] Erie v. Diefendorf, 278 Pa. 31, 122 A. 159.' Fleck-Atlantic Co. v. Indemnity Insurance Co. of North America, 326 Pa. 15, 19, 191 A. 51, 53. Obligations not imposed by the terms of the bond cannot be created by judicial construction or interpretation which extends the terms beyond their normal meaning."

In the foregoing case, very like the case at bar, the bonds were conditioned on the contractor performing "the terms and conditions of said contract and his * * * obligations thereunder." There the contract provided that workmen's compensation insurance should be furnished by the contractor, but it did not in express terms require that the contractor pay the premiums thereon. The claim against the surety by the third party to recover for the unpaid premiums was denied. See also, Dravo-Doyle Co. v. Royal Indemnity Co., 1952, 372 Pa. 64, 92 A.2d 554; Fleck-Atlantic Co. v. Indemnity Insurance Co. of North America, 1937, 326 Pa. 15, 191 A. 51.

With the foregoing principles and cases in mind, it seems plain that the contracts under consideration do not in express terms require that the Contractor shall pay the specified contributions and taxes as they do expressly require that he shall pay laborers and materialmen. Instead, the contracts provide that the Contractor shall indemnify the Owner

against contributions or taxes, for the payment of which the Contractor "accepts full and exclusive liability". Similar language used in a contract construed in United States Fidelity & Guaranty Co. v. United States, 10 Cir., 1952, 201 F.2d 118, 119, was held to be "merely declaratory of [the contractor's] existing liability under the federal tax laws" and "did not create the liability on [the contractor's] part for the payment of these taxes."

There are no other parts of the contracts from which a promise by the Contractor to Owner to pay the former's taxes can be implied; indeed, the implications are to the contrary. Whereas the contracts are quite specific in providing that the Owner could withhold unpaid balances until Contractor furnished releases of liens, nothing is said about withholding said balances until proofs were furnished that the contributions or taxes mentioned were paid; and whereas the bonds are conditioned specifically upon the Contractor's paying for labor and material, they nowhere mention taxes. In addition, the Contractor's promise to pay laborers and materialmen is clearly for the benefit of such third parties, but neither in the stipulation of facts or in the contracts is there any indication that the parties intended to benefit the United States or any other taxing body. The only obvious purpose and intention of the Owner "both in spirit and letter" was to protect itself and provide for indemnity.[10] Exceedingly great care and caution were used to make it plain that the Contractor recognized his sole liability to pay contributions or taxes arising out of his business, including the withholding and social security taxes in suit, but he did not expressly agree to pay them.

 Construing the contracts, as I do, as undertakings to indemnify the Owner against loss, there is, of course,

no liability on the Surety unless actual loss is suffered by the Owner, and "ordinarily a third person has no right to sue upon an indemnity agreement. * * *" Burke v. North Huntingdon Twp. Municipal Authority, 1957, 390 Pa. 588, 136 A.2d 310, 315; Williston on Contracts, rev. ed., vol. 2, § 403, p. 1159. Even if a promise to pay taxes could be implied, the government is simply an incidental beneficiary, the contracts and bonds not having been made for its benefit, and it cannot recover. Burke v. North Huntingdon Twp. Municipal Authority, supra; Williston on Contracts, rev. ed., vol. 2, § 402, p. 1157.

If the parties intended to include taxing bodies as entities to be benefited, a few additional words would have expressed the agreement, as was done in the sections of the contracts and bonds providing that the Contractor shall pay laborers and materialmen.

The government relies on United States v. Phoenix Indemnity Co., 4 Cir., 1956, 231 F.2d 573, 574, but in that case the contract specifically and clearly provided that the contractor should "pay * * * taxes legally collectible because of the work * * *." Obviously, that contract was made for the benefit of the taxing bodies.

 Since no express or implied promise to pay the mentioned taxes for the benefit of the government can be found, in the light of the terms of the contracts and attendant circumstances, the government is not a donee beneficiary entitled to recover the Contractor's withholding and social security taxes from the Surety. The obligation of the bonds cannot be extended beyond the plain import of the words used in the contract. Dravo-Doyle Co. v. Royal Indemnity Co., supra; Commonwealth v. Fidelity & Deposit Co., supra; Fleck-Atlantic Co. v. Indemnity Insurance Co. of North America, supra.

10. The quoted phrase is from City of Lancaster v. Frescoln, 1902, 203 Pa. 640, 53 A. 508, 510.