GEORGE W. McGRATH, Respondent, *v.* AMERICAN SURETY COMPANY OF NEW YORK, Appellant.

Argued October 11, 1954; decided November 18, 1954.

*Mahlon A. Freeman* for appellant. I. The complaint is barren of any allegation that plaintiff relied upon the bonds. (*Buffalo Cement Co.* v. *McNaughton,* 90 Hun 74, 156 N. Y. 702; *Eastern Steel Co.* v. *Globe Ind. Co.,* 227 N. Y. 586; *Duffy Co.* v. *Board of Educ.,* 280 N. Y. 773.) II. It was the intention of the surety and the general contractor to have the general contractor sole beneficiary of the bonds sued upon, excluding third parties. (*Fosmire* v. *National Sur. Co.,* 229 N. Y. 44; *Van Clief & Sons* v. *City of New York,* 141 Misc. 216; *Brainard* v. *New York Central R. R. Co.,* 242 N. Y. 125.) III. The two bonds sued upon are for different independent purposes and neither is to be read to support the other; and neither gives a direct cause against the surety to plaintiff. (*Adirondack Core & Plug Co.* v. *New York Central R. R. Co.,* 238 App. Div. 346; *Daniel-Morris Co.* v. *Glens Falls Ind. Co.,* 283 App. Div. 504.) IV. The complaint in this action does not state facts sufficient to constitute a cause of action and the question certified should be answered in the negative.

*Bertram S. Bermar* and *Bernard Williams Cohen* for respondent. The payment bond sued upon is for the benefit of plaintiff-respondent, who has a direct right of action thereon. (*Lawrence* v. *Fox,* 20 N. Y. 268; *Seaver* v. *Ransom,* 224 N. Y. 233; *Van Clief & Sons* v. *City of New York,* 141 Misc. 216; *McCormack Sand Co.* v. *Milligan, Inc.,* 253 App. Div. 743; *Fosmire* v. *National Sur. Co.,* 229 N. Y. 44; *Eastern Steel Co.* v. *Globe Ind. Co.,* 186 App. Div. 892, 227 N. Y. 586; *Maltby & Sons Co.* v. *Wade,* 131 Misc. 143, 224 App. Div. 779; *International Time Recording Co. of N. Y.* v. *Southern Sur. Co.,* 142 Misc. 501; *Greybar Elec. Co.* v. *Seaboard Sur. Co.,* 157 Misc. 275; *Newark Concrete Pipe Co.* v. *National Sur. Co.,* 131 Misc. 718; *McClare* v. *Massachusetts Bonding & Ins. Co.,* 266 N. Y. 371; *Daniel-Morris Co.* v. *Glens Falls Ind. Co.,* 283 App. Div. 504.)

VAN VOORHIS, J. This appeal concerns whether the amended complaint states a cause of action. A plumbing subcontractor owes $8,500 to plaintiff for labor and services performed in the construction of a veterans' hospital at Pittsburgh, Pennsylvania. A Federal statute known as the Miller Act (U. S. Code, tit. 40, §§ 270a, 270b) requires that in the performance of such public work for the Federal Government, every general contractor shall

furnish to the United States (1) a performance bond guaranteeing the completion of the work, and (2) a payment bond for the protection of all persons supplying labor and material in the prosecution of the work. Section 270b gives to every person who has furnished labor or material in the prosecution of the work a cause of action on the payment bond, " *Provided, however,* That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed ".

Plaintiff comes within the language quoted from section 270b, that is to say, he is a person having direct contractual relationship with the subcontractor but not with the general contractor. The Miller Act conferred upon him a cause of action on the payment bond required to be given by the general contractor to the Federal Government.

The bond in suit is not that bond, viz., it is not the payment bond given by the general contractor under the Miller Act. Defendant-appellant is the surety on a bond given by the subcontractor which indemnifies the general contractor against liability to creditors of the subcontractor under the Miller Act. If the order appealed from were correct, it would mean that the contractor and subcontractor considered that the laborers and materialmen of the subcontractor were not sufficiently protected by the Miller Act, and consequently set out to enlarge their rights by the procurement of the additional bond in suit. That is manifestly not what occurred. The rights of these laborers and materialmen of the subcontractor were definitely fixed and considered to be protected adequately by the Miller Act. The object in giving the bond in suit was to protect the contractor against this very liability imposed upon him by Federal law.

This conclusion is not altered by the circumstance that the bond upon which the action is based is conditioned upon

payment by the subcontractor of its obligations to laborers and materialmen. This condition merely described the events in which the general contractor could have recourse to the bond, if it were harassed by losses due to neglect of the subcontractor to satisfy these obligations. Similar language was held to mean no more in *Eastern Steel Co. v. Globe Ind. Co.* (227 N. Y. 586), *Buffalo Cement Co. v. McNaughton* (90 Hun 74, affd. on opinion below, 156 N. Y. 702), and *Fosmire v. National Sur. Co.* (229 N. Y. 44). Those cases hold that similar bonds were intended to operate exclusively for the benefit of the State or municipality to which the bonds ran. The opinion in the *Fosmire* case did emphasize, and on this plaintiff here stands or falls, that payment of laborers and materialmen was there mentioned in a single performance bond, the dominant purpose of which was to protect the State in case the contractor failed to complete the work undertaken by the contract. The court said: '' This dominant purpose will be defeated if laborers may ignore the People, and sue in their own right. They may then sue for wages as often as there is default, and exhausting the penalty of the bond, leave nothing for the state.'' (P. 48.) The circumstance that no separate performance bond had been given by the contractor to the State, was held to evidence an intention that the cause of action was solely in favor of the State. '' In so holding,'' the opinion continues (per CARDOZO, J.), '' we put our decision upon the single ground that the bond, read in its entirety, is inconsistent with an intention that the plaintiff and others in like position should have the right to sue upon it. If that intention is absent, the right to sue will be denied (*Simson v. Brown,* 68 N. Y. 355). A different question would be here if the bond had been conditioned for the payment of wages and nothing else. The interest of the state in the welfare of those who labor on its public works might then point to an intention to create a cause of action in their favor (*Matter of Int. Ry. Co. v. Rann,* 224 N. Y. 83; Williston on Contracts, secs. 372, 402. Cf. 28 U. S. Stat. 278; 33 id. 811; *Texas P. Cement Co. v. McCord,* 233 U. S. 157). For the purpose of this opinion, we assume, without attempting to decide, that when such an intention is revealed, there is no legal obstacle in the way of its enforcement (*Seaver v. Ransom,* 224 N. Y. 233; *Lawrence v. Fox,* 20 N. Y. 268; Williston, *supra*). '' (Pp. 47–48.)

That statement in the *Fosmire* case (*supra*), appropriate to its context, has caused this complaint to be sustained since here there are separate payment and performance bonds. But other facts are different, bringing this appeal within the *Fosmire* holding and outside of the suggested distinction. In the *Fosmire* case, as in the *Eastern Steel Co.* and *Buffalo Cement Co.* cases (*supra*), subcontractors were not involved. No obligation to unpaid laborers or materialmen had been created by statute between parties otherwise not connected by contract among whom there was no liability before. In each of those decisions, the purpose of the bond was to provide security to insure that a contractor would pay his own laborers and materialmen, as well as to guarantee that he would perform the contract. In such instances, it might be inferred that if a payment bond were to be exacted in addition to a performance bond, the payment bond would be designed to benefit the employees and materialmen of the contractor. If they sued upon the payment bond, that would not exhaust the penalty of the performance bond. The obligee would still be protected if it became necessary to complete the construction job.

Here, however, the reason for giving separate payment and performance bonds was not to adjust to this distinction in *Fosmire* v. *National Sur. Co.* (*supra*). It was to render certain that the general contractor would be indemnified against liability created by the Miller Act for payment of materialmen and laborers of its subcontractor, *and* against failure of the subcontractor to complete performance of the subcontract. If a subcontractor encounters financial difficulty, not only are his laborers and materialmen liable to go unpaid, but also he will probably fail to finish the construction work covered by his subcontract. In that event, the general contractor will be required by the Miller Act to meet the demands of the subcontractor's unpaid laborers and materialmen, and will also be required to complete the work which the subcontractor has neglected to perform. It follows that unless the general contractor were to exact separate payment and performance bonds from his subcontractor, a single bond might be exhausted either by indemnification against demands of unpaid laborers or materialmen of the subcontractor under the Miller Act, or by the cost of completing the construction work. The object in

having a separate payment bond — the one in suit — was to protect the general contractor against the contingency which would arise if the subcontractor's performance bond were to become exhausted in completing the construction work, thereby leaving the general contractor exposed to liability under the Miller Act to unpaid laborers or materialmen of the subcontractor without indemnification.

The instant case thus falls within the *Fosmire* precedent. Just as there the court discerned that the intention was to protect the State rather than unpaid creditors of the contractor, from the circumstance that otherwise the security for performance of the contract to the State might be undermined by paying claims of laborers and materialmen, so, here, the object in giving two bonds was to assure that exhaustion of the performance bond would not impair the obligation of the surety to indemnify the general contractor against payments which it might be required by the Miller Act to make to creditors of the subcontractor. The object of this payment bond was not to supersede nor to supplement rights of action of unpaid materialmen or laborers of the subcontractor under the Miller Act, but to indemnify the general contractor against its liability to satisfy such claims without exhausting its protection against failure of the subcontractor to perform the work. The purpose was to protect the general contractor and not to add to liability created by the Miller Act in favor of third parties.

The order appealed from should be reversed, and defendant-appellant's motion to dismiss under rule 106 should be granted for insufficiency in law, with costs in all courts. The question certified is answered in the negative.

The order of the Appellate Division and that of Special Term should be reversed, with costs in all courts, and the matter remitted with directions to dismiss the complaint. The question certified is answered in the negative.

LEWIS, Ch. J., CONWAY, DESMOND, DYE, FULD and FROESSEL, JJ., concur.

Orders reversed, etc.