**SOCONY–VACUUM OIL COMPANY, Incorporated, Plaintiff-Appellant,**

v.

**CONTINENTAL CASUALTY COMPANY, Defendant-Appellee.**

**No. 156, Docket 23179.**

United States Court of Appeals, Second Circuit.

Argued Jan. 13, 1955.

Decided Feb. 7, 1955.

Edmunds, Austin & Wick, Burlington, Vt., for plaintiff-appellant.

Fletcher B. Joslin, Theriault & Joslin, Montpelier, Vt. (Andrew Eckel, New York City, Donald B. Knight, Brooklyn, N. Y., of counsel), for defendant-appellee.

Before CLARK, Chief Judge, and FRANK and HINCKS, Circuit Judges.

HINCKS, Circuit Judge.

The Bennett-Stewart Co., Inc. (hereinafter referred to as the prime contractor) was awarded a contract by the United States Government to construct a radar station at St. Albans, Vermont, and gave the "performance bond" and the "payment bond" required by the Miller Act, 40 U.S.C.A. §§ 270a, 270b.[1] The prime contractor entered into a subcontract with R. F. Carpenter, Inc. (hereinafter referred to as the subcontractor) for road and parking area construction work around the radar station. Obviously having in mind its liabilities under the Miller Act to the subcontractor's materialmen, the prime contractor required the subcontractor to furnish a surety bond. The subcontractor, accordingly, provided a surety bond whereby it, as principal, and the defendant surety company, as surety, obligated themselves to the prime contractor in the penal sum of $162,000. This bond, which was made a part of the complaint, was conditioned as follows:

"Whereas, the above bounden Principal has entered into a certain written contract with the above named Obligee, dated the 8th day of May, 1950, for the construction of Roads, Parking Areas, etc., at St. Albans, Vermont.

Which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein.

Now Therefore, The Condition of The Above Obligation Is Such, That if the above bounden Principal shall pay all labor and material obligations and shall well and truly keep, do and perform, each and every, all and singular, the matters and things in said contract set forth and specified to be by the said Principal kept, done and performed at the time and

[1] The Miller Act, 40 U.S.C.A. § 270a provides:

"(a) Before any contract, exceeding $2,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person, who is hereinafter designated as 'contractor':

"(1) A performance bond with a surety or sureties satisfactory to the officer awarding such contract, and in such amount as he shall deem adequate, for the protection of the United States.

"(2) A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person."

Section 270b provides:

"(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: *Provided, however,* That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed."

in the manner in said contract specified, and shall pay over, make good and reimburse to the above named Obligee, all loss and damage which said Obligee may sustain by reason of failure or default on the part of said Principal, then this obligation shall be void; otherwise to be and remain in full force and effect."

The plaintiff herein was a materialman of the subcontractor which, having failed within the time limitations of the proviso in Section 2 of the Miller Act, 40 U.S. C.A. § 270b(a), to perfect its rights against the surety on the prime contractor's payment bond, brought this action in the United States District Court for the District of Vermont to recover for material furnished by it to the subcontractor for use in the performance of the subcontract and hence a part of the material provided in the prosecution of the main contract. The basis of jurisdiction is diversity of citizenship and no jurisdictional problem is presented.

In the court below the defendant moved to dismiss on the ground that the plaintiff had no right in the bond because the bond was for the benefit of the prime contractor only and not third parties, and that the plaintiff by failing to pursue its rights against the prime contractor under the Miller Act had injured the defendant. This motion was granted, 122 F.Supp. 621, on the ground that the bond was given only for the benefit of the prime contractor, and not for the protection of the plaintiff as a materialman. From the ensuing judgment this appeal is prosecuted.

■ The record shows that the defendant Casualty Company was an Illinois corporation, that its principal—the subcontractor—was a Vermont corporation, and that the prime contractor was a Massachusetts corporation, and that the subcontract was one to be performed in Vermont. There is nothing in the record to show that the parties to the bond contemplated or agreed that it was to be interpreted or governed by the law of any particular state. Accordingly, we think the problem presented should be determined by the law of Vermont. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

However, there seems to be neither statute nor judicial precedent in Vermont bearing on the problem. And the problem presented has been variously decided in various jurisdictions. Confronted with this dilemma our task is not to surmise which line of judicial precedent a Vermont court would follow if presented with the case, but rather, by looking to the same sources which a Vermont court would presumably consult and by weighing the comparative reasoning of learned authors and conflicting judicial decisions for their intrinsic soundness, to define the pertinent law which when thus ascertained is presumably the law of Vermont even though as yet unannounced by a Vermont Court. See Moore, Commentary on the United States Judicial Code, pp. 338–340.

■ Professor Corbin in his work on law of contracts, 4 Corbin on Contracts, Sections 798–804, has this to say: " * * the third party has an enforcible right if the surety promises in the bond, either in express words or by reasonable implication, to pay money to him. If there is such a promissory expression as this, there need be no discussion of 'intention to benefit'. We need not speculate for whose benefit the contract was made, or wonder whether the promisee was buying the promise for his own selfish interest or for philanthropic purposes. It is a much simpler question: Did the surety promise to pay money to the plaintiff?" See also Corbin, "Contractor's Surety Bonds," 38 Yale Law Journal 1. This doctrine, we think, has the support of the great weight of authority. A long line of cases cited to such doctrine in 77 A.L.R. 53 amplifies the cases which Professor Corbin particularly cites.

It is true that in the bond here sued on the only expressly promissory words are those whereby the surety acknowledges itself bound to the prime contractor, as obligee, in the penal sum of $162,-000. But since the bond is stated to be on condition that the principal—here the

subcontractor—"shall pay all labor and material obligations," the words of the condition are the full equivalent of words of direct promise.[2]

We are unable to recognize either the validity or the relevance of the conclusion of the trial judge that the bond was given only for the benefit of the prime contractor and not for the protection of materialmen. Doubtless the prime contractor in requiring a bond of its subcontractor sought protection against his own liability to materialmen of the subcontractor. But this he obtained through a bond requiring the payment of the materialmen. Obviously it was contemplated that performance under the bond would benefit not only the prime contractor who would thereby be exonerated from liability to the materialmen thus paid but also the materialmen of the subcontractor who were thereby to be paid.

But this aside, we think it was wholly irrelevant for the trial judge to speculate as to the motives of the parties of the bond. The scope of the bond, like any written contract, must be determined not by the unexpressed motive of the parties but rather by the ordinary meaning of the words which they used. By this simple test, the defendant here was plainly obligated to pay "material obligations" such as that sued on here.

The situation is affected not at all by the fact that the plaintiff failed to perfect its rights under the Miller Act against the prime contractor and its surety. The bond now sought to reach was not one required under that Act and the rights to which it gave rise are not qualified by the Act or conditioned upon the timely pursuit of remedies under that Act. The rights under this bond must be determined by its language interpreted as of the date it was given. At that time, of course, it was not known whether all or some of the materialmen would fail or decline to press their rights under the Miller Act.

Moreover, the bond was conditioned not only on the *payment* of "material obligations" but also on reimbursement to the obligee of "all loss and damage which said obligee may sustain by reason of failure or default on the part of said Principal." This latter branch of the condition was broad enough to protect the prime contractor against claims of materialmen which through timely prosecution had actually caused loss to the prime contractor or *his* surety. The branch of the condition calling for *payment of material obligations* without limitation to those which might be timely prosecuted under the Miller Act imports an intent that all were to be included within the obligation of the bond.

The judge below relied on the case of Spokane Merchants' Ass'n v. Pacific Surety Co., 1915, 86 Wash. 489, 150 P. 1054, and in support of his ruling the plaintiff-appellee cites the recent case of McGrath v. American Surety Company of New York, 307 N.Y. 552, 122 N.E.2d

---

2. 4 Corbin on Contracts, pages 177–178.
"Words of 'condition' are not words of 'promise' in form; but in this class of cases it is sound policy to interpret the words liberally in favor of the third parties. In a majority of states, it is already done; and without question the surety's rate of compensation for carrying the risk is sufficiently adjusted to the law. The compensated surety has become an institution that is well suited to carry the risk of the principal contractor's default, whereas individual laborers and materialmen are frequently very ill prepared to carry the risk. The legislatures have recognized this fact, and in the case of public contracts have required surety bonds to protect the third parties. While this has not been done in the case of private construction, and while the courts should not on their own motion put such a provision into a private surety bond, they may well interpret a bond that is expressly conditioned on the payment of laborers and materialmen as being a promise to pay them and made for their benefit. The words reasonably permit it, and social policy approves it. The court need not strain the words of the bond, as has sometimes been done, to hold that the third persons were not intended as beneficiaries thereof, even though the promisee may have been thinking chiefly of himself when he paid for the bond."

906. The McGrath decision was predicated on prior decisions of that court, viz.: Eastern Steel Co. v. Globe Indemnity Co., 227 N.Y. 586, 125 N.E. 917; Buffalo Cement Co. v. McNaughton, 90 Hun 74, 35 N.Y.S. 453, affirmed on opinion below, 156 N.Y. 702, 51 N.E. 1089, and Fosmire v. National Surety Co., 229 N.Y. 44, 127 N.E. 472. But these three cases which the court cited in the McGrath opinion were all cases relating to bonds in which a prime contractor was the principal and the state or a municipality was the obligee: in each, the bond given was one required by statute or ordinance. Consequently none involved the rights of materialmen against the surety of a subcontractor under a private bond. Certainly these cases are not apposite to the case before us: considerations of public policy affecting the scope of statutory bonds are absent when it comes to determine the scope of a private bond. Notwithstanding, we find, at least in the Fosmire and Buffalo Cement cases, dicta which we think support our holding here as to the plaintiff's right under a private bond.

We do not blink the fact that the McGrath case, as far as appears from the facts stated in the opinion, is legally indistinguishable from that now before us. True, in McGrath the subcontractor furnished both a payment bond and a performance bond whereas here a single bond is involved which is conditioned both for payment of "material obligations" and for performance of the subcontract. But this, we think, is a difference without legal significance. But both the Spokane and the McGrath cases and others of similar purport we think out of line with the great weight of authority referred to above. With deference, we suggest that it is unfortunate doctrine to modify the scope of a plainly stated written obligation in a private bond by the supposed motive of the obligee, as these cases seem to do. Such doctrine leads to unnecessary and undesirable uncertainty in business relationships. It means that one within the orbit of a private bond cannot rely upon a plainly stated obligation: instead he must search for the undisclosed motive of the parties and take that as the measure of his rights.

In cases such as these involving a private bond not required by statute, even if—contrary to our view—there be need to search for the motive which led to the taking of a bond, we find a lack of rational basis for an analysis which goes no further than to recognize intent to provide protection to the obligee against actually accrued liability under some statute such as the Miller Act. To say that the object of the bond was only to protect the obligee against liabilities imposed upon him by the Miller Act overlooks the fact that the bond was not required by that Act and calls for the payment of "*all* labor and material obligations" without express limitation to liabilities of the obligee under the Miller Act. In our view, the object of the bond was to accomplish the payment of these obligations and by such payment to provide protection to the obligee. If the obligee sought indemnity only or if it wished to exclude third parties from benefit under a surety bond, the natural presumption is that it would not have required a surety's payment bond. But here the prime contractor required a payment bond and paid the premium for a payment bond, at least indirectly under the terms of the subcontract whereby the subcontractor made the direct payment. And the defendant in return for the premium, furnished a payment bond. It follows that the surety should not be allowed to avoid the obligation which it was paid to assume by suggesting that as things turned out the obligee did not need all the protection which was bargained and paid for. Were we to hold otherwise, we should in effect, by substituting a mere contract for indemnity for the bond which was made, be presenting the defendant surety company with an unearned windfall.

Since we find it necessary to remand, it seems advisable to say that we find no merit in the defendant's assertion, by way of defense, that is was injured by

**650**

the plaintiff's failure to pursue its right against the prime contractor under the Miller Act. If the plaintiff, when it furnished material, had a right against the prime contractor and his surety and also, as we hold, a right against the subcontractor and the defendant as its surety, we know of no principle of law which required the plaintiff first to exhaust its remedy against the prime contractor and its surety.

Reversed and remanded.