**GLENS FALLS INDEMNITY COMPA-NY, a corporation, and E. F. Grandy, Inc., a corporation, Appellants,**

v.

**AMERICAN SEATING COMPANY, a corporation, Appellee.**

No. 15164.

United States Court of Appeals Ninth Circuit.

Oct. 16, 1957.

Albert Lee Stephens, Jr., John E. McCall, Los Angeles, Cal., for appellants.

Burnett L. Essey, Irving H. Green, Los Angeles, Cal., Jack Paul, Beverly Hills, Cal., for appellee.

Before MATHEWS, FEE and CHAMBERS, Circuit Judges.

MATHEWS, Circuit Judge.

On May 4, 1949, in California, the United States and E. F. Grandy, Inc., a California corporation, hereafter called Grandy, entered into a written contract, hereafter called the prime contract,[1] whereby Grandy (the prime contractor) undertook and agreed, for a consideration of $93,865, to "furnish the materials, and perform the work for converting Building No. IS-16 to Quality Control Surveillance Laboratory and constructing a dynamic test building, including appurtenant structures and facilities, complete and ready for use at the U. S. Naval Ammunition & Net Depot, Seal Beach, California," in accordance with specifications, schedules and drawings attached to and made a part of the prime contract, said work to be completed by October 1, 1949.

On May 4, 1949, in California, Grandy and V. L. Murphy entered into a written contract, hereafter called the subcontract, whereby Murphy (the subcontractor) undertook and agreed, for a consideration of $16,667.05, to perform and complete, by September 1, 1949, a specified portion of the work provided for in the prime contract and "to furnish all materials, labor, tools, machinery, equipment, light, power, water or other things necessary to perform and complete" said portion of said work.

In connection with the prime contract, as required by § 1 of the Miller Act, 40 U.S.C.A. § 270a, Grandy furnished the United States two bonds, hereafter called the Grandy bonds—a performance bond in the sum of $93,865 for the protection of the United States and a payment bond in the sum of $46,933 for the protection

of all persons supplying labor and material in the prosecution of the work provided for in the prime contract.[2] In each of the Grandy bonds, Grandy and Hartford Accident & Indemnity Company, a Connecticut corporation, hereafter called Hartford, were obligors— Grandy as principal and Hartford as surety—and the United States was obligee.

In connection with the subcontract, Murphy furnished Grandy two bonds, hereafter called the Murphy bonds—a performance bond in the sum of $16,667.-05 and a so-called payment bond in the sum of $8,333.58. In each of the Murphy bonds, Murphy and Glens Falls Indemnity Company, a New York corporation, hereafter called Glens, were obligors— Murphy as principal and Glens as surety —and Grandy was obligee.

The condition of the Murphy performance bond was that, "If [Murphy] shall well and truly perform and fulfill all the undertakings, covenants, terms, conditions, and agreements of [the subcontract] and any extensions thereof that may be granted by the Government, with or without notice to [Glens], and during the life of any guaranty required under [the subcontract], and shall also well and truly perform and fulfill all the undertakings, covenants, terms, conditions and agreements of any and all duly authorized modifications of [the subcontract] that may hereafter be made, notice of which modifications to [Glens] being hereby waived, then, this obligation to be void; otherwise to remain in full force and virtue."

The condition of the Murphy payment bond, so-called, was that, "If [Murphy] shall indemnify and hold [Grandy] free and harmless from and against all loss and damage by reason of [Murphy's] failure to promptly pay to all persons supplying labor and materials used in the prosecution of the work provided for

---

1. Several times in the record, the prime contract is erroneously described as a contract dated April 29, 1949. Its actual date was May 4, 1949.

2. At the trial on May 8, 1953, the prime contract and the Grandy bonds were put in evidence as Exhibit B, which, though not included in the printed transcript, is part of the record on appeal.

in [the subcontract], then this obligation shall be null and void, otherwise to remain in full force and effect."

The work provided for in the subcontract was not completed by September 1, 1949, nor was the work provided for in the prime contract completed by October 1, 1949. However, all the work was completed and accepted by the United States, the $93,865 mentioned in the prime contract was paid by the United States to Grandy and the $16,667.05 mentioned in the subcontract was paid by Grandy to Murphy's assignee, Farmers & Merchants Bank of Long Beach, a California corporation, hereafter called the bank, in or about June, 1950.[3]

On March 15, 1950, American Seating Company, a New Jersey corporation, hereafter called plaintiff, sold and supplied to Murphy material which was used by Murphy in the prosecution of the work provided for in the subcontract. The material thus supplied to Murphy was of the reasonable value and contract price of $6,124.37,[4] which was due and payable to plaintiff on April 15, 1950. Payment thereof was demanded by plaintiff of Murphy, Glens, Grandy and the bank, but no part thereof was ever paid.

On February 9, 1951, in the Superior Court of Los Angeles County, California, plaintiff brought an action against Murphy to recover the amount due plaintiff for the material supplied to Murphy. Plaintiff obtained a judgment in that action on March 6, 1952, but, Murphy being insolvent, that judgment was worthless.

On July 2, 1952, in the United States District Court for the Southern District of California, plaintiff brought an action against Glens, Grandy and the bank to recover the amount due plaintiff for the material supplied to Murphy.[5] Glens answered on August 6, 1952. Grandy answered on October 22, 1952. So far as the record shows, the bank never answered. As between plaintiff and Glens and Grandy, the action was tried without a jury on May 8, 1953, no demand for trial by jury having been made. As between plaintiff and the bank, no trial was had. On June 9, 1953, the District Court stated its findings and conclusions and entered a judgment ordering, adjudging and decreeing that plaintiff recover of Glens and Grandy $6,356, with interest from June 1, 1949,[6] and costs. On June 19, 1953, Glens and Grandy moved for a new trial. The motion was denied on December 31, 1953. On January 26, 1954, Glens and Grandy appealed from the judgment of June 9, 1953.

Multiple claims—a claim against Glens and Grandy and a claim against the bank —were presented in this action. As indicated above, the judgment of June 9, 1953, adjudicated the claim against Glens and Grandy, but did not adjudicate the claim against the bank. The determination mentioned in Rule 54(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. was not made. Hence the judgment of June 9, 1953, was not appealable on January 26, 1954.[7] The appeal taken on

---

3. Presumably, extensions of time for completion of the work were granted by the United States to Grandy and by Grandy to Murphy.

4. The complaint filed on July 2, 1952, erroneously stated that this material was furnished to Murphy on or about June 1, 1949, and was of the reasonable value and contract price of $6,356.

5. In the complaint, this amount was said to be $6,356, with interest from June 1, 1949. Actually, it was $6,124.37, with interest from April 15, 1950.

6. See footnotes 4 and 5.

7. Kam Koon Wan v. E. E. Black, Ltd., 9 Cir., 182 F.2d 146; Burkhart v. United States, 9 Cir., 210 F.2d 602; Russell v. Texas Co., 9 Cir., 211 F.2d 740; Wynn v. Reconstruction Finance Corp., 9 Cir., 212 F.2d 953; Steiner v. 20th Century-Fox Film Corp., 9 Cir., 220 F.2d 105; Walter W. Johnson Co. v. Reconstruction Finance Corp., 9 Cir., 223 F.2d 101; Glens Falls Indemnity Co. v. American Seating Co., 9 Cir., 225 F.2d 838; Russell v. Hackworth, 9 Cir., 233 F.2d 503; Bergman v. Aluminum Lock Shingle Corp., 9 Cir., 237 F.2d 386; Massa v. Jiffy Products Co., 9 Cir., 238 F.2d 228.

January 26, 1954, was accordingly dismissed by us on August 30, 1955.[8]

Our mandate was issued on October 3, 1955, and was filed in the District Court on December 13, 1955. On March 23, 1956, pursuant to a stipulation of plaintiff and the bank, the action was dismissed as to the bank, without prejudice. Thereafter Glens and Grandy were the only defendants in the action. On March 30, 1956, the District Court made an order purporting to amend, nunc pro tunc, the judgment of June 9, 1953. On April 6, 1956, the District Court made an order which, in effect, vacated and set aside the judgment of June 9, 1953, and the order of March 30, 1956, and directed the entry of a new judgment. A new judgment was accordingly entered on April 18, 1956—a judgment ordering, adjudging and decreeing that plaintiff recover of Glens and Grandy $6,124.37, with interest from April 15, 1950,[9] and costs. On April 20, 1956, Glens and Grandy appealed from the judgment of June 9, 1953, and from the judgment of April 18, 1956.

Having been vacated and set aside by the order of April 6, 1956, and having been superseded by the judgment of April 18, 1956, the judgment of June 9, 1953, was not appealable on April 20, 1956. The appeal taken on April 20, 1956, from the judgment of June 9, 1953, is accordingly dismissed.

The appeal from the judgment of April 18, 1956, will now be considered.

Originally, as indicated above, this was an action against Glens, Grandy and the bank. Having been dismissed as to the bank on March 23, 1956, it was thereafter an action against Glens and Grandy and no one else. As against Glens and Grandy, it was an action on the Murphy bonds and nothing else.[10]

As indicated above, the Murphy bonds were furnished by Murphy to Grandy in connection with the subcontract. Hence plaintiff's rights, if any, and Glens' and Grandy's obligations, if any, under the Murphy bonds were governed by the law of the State in which the subcontract was made and was to be performed,[11] which is to say, by California law.

Actually, in each of the Murphy bonds, Murphy and Glens were the obligors, and Grandy was the obligee. Grandy was not an obligor, nor was plaintiff an obligee, in the Murphy bonds or either of them.

The District Court found that Glens and Grandy knew that it was necessary for Murphy to obtain from plaintiff the material used in the prosecution of the work provided for in the subcontract, but this finding was unsupported by evidence and clearly erroneous. The evidence showed that such material was necessary, but the evidence did not show that it was necessary for Murphy to obtain such material from plaintiff. Much less did the evidence show that Glens and Grandy or either of them knew this to be necessary. Nor is it material, if true, that Glens and Grandy knew this to be necessary; for such knowledge, if Glens and Grandy had such knowledge, did not make Grandy an obligor or plaintiff an obligee in the Murphy bonds or either of them.

The District Court found that "there existed a contractual relationship relating to [the Murphy bonds] between plaintiff and [Glens and Grandy] and each of them," but this finding was unsupported by evidence and clearly errone-

8. Glens Falls Indemnity Co. v. American Seating Co., supra.

9. See footnotes 4 and 5.

10. The complaint mentioned the prime contract and the subcontract, but did not allege that plaintiff was a party to or a beneficiary under the prime contract or the subcontract, or that the prime contract or the subcontract obligated Glens and Grandy or either of them to pay plaintiff anything. The complaint did not mention or refer to the Grandy bonds or either of them.

11. Continental Casualty Co. v. Schaefer, 9 Cir., 173 F.2d 5; Socony-Vacuum Oil Co. v. Continental Casualty Co., 2 Cir., 219 F.2d 645; Edward E. Morgan Co. v. United States, 5 Cir., 230 F.2d 896.

ous. The record discloses no such relationship.

The District Court found that the Murphy bonds "were written in part for the protection of plaintiff to the extent of plaintiff's claim as made in [the complaint]," but this finding was unsupported by evidence and clearly erroneous. The evidence showed that the Murphy bonds were written for the protection of Grandy and no one else.

The Murphy performance bond protected Grandy against Murphy's failure to "well and truly perform and fulfill all the undertakings, covenants, terms, conditions, and agreements of [the subcontract]." Suppliers of labor and material in the prosecution of the work provided for in the subcontract were not mentioned or referred to in the Murphy performance bond. Against Murphy's failure to pay for such labor and material, all such suppliers, including plaintiff, were protected by the Grandy payment bond.[12] Hence the Murphy performance bond did not inure to plaintiff's benefit or obligate Glens and Grandy or either of them to pay plaintiff anything.[13]

The Murphy payment bond, so-called, was a mere indemnity bond. It obligated Murphy and Glens to indemnify Grandy against "all loss and damage by reason of [Murphy's] failure to pay promptly to all persons supplying labor and materials used in the prosecution of the work provided for in [the subcontract]." It did not obligate Murphy and Glens or either of them to pay Grandy anything unless and until Grandy suffered such loss or damage, which does not appear to have occurred.[14] It did not obligate Glens and Grandy or either of them to indemnify plaintiff against anything or to pay plaintiff anything.[15]

We conclude that plaintiff was not entitled to recover anything in this action.

Undoubtedly, the amount due plaintiff could have been recovered of Grandy and Hartford in an action on the Grandy payment bond under § 2 of the Miller Act. This, however, was not such an action. The complaint in this action did not mention or refer to the Grandy bonds or either of them, nor was Hartford a party to this action, nor was this action brought in the name of the United States, as it would have been if brought under § 2 of the Miller Act.

The judgment of April 18, 1956, is reversed.

12. See §§ 1 and 2 of the Miller Act, 40 U.S. C.A. §§ 270a, 270b.

13. Maryland Casualty Co. v. Shafer, 57 Cal.App. 580, 208 P. 192; Summerbell v. Weller, 110 Cal.App. 406, 294 P. 414; Lamson Co. v. Jones, 134 Cal.App. 89, 24 P.2d 845.

14. The complaint did not allege, nor did the

District Court find, nor does the record show, that Grandy ever suffered any loss or damage.

15. Terry v. Southwestern Building Co., 43 Cal.App. 366, 185 P. 212; Ramey v. Hopkins, 138 Cal.App. 685, 33 P.2d 443; Thode v. McAmis, 96 Cal.App.2d 833, 216 P.2d 548.