George T. Vattoeembuleít,
Off. Ref. A number of actions arising out of the same transaction were consolidated. This opinion decision involves the action of Raymond J. Schmidt and George 0. Schmidt, doing business as Schmidt Bros. Tile Co., plaintiffs, against the Newark Insurance Company. It also involves the claims of Salvatore J. Yovienne, doing business as Lackawanna Home Insulation, Francis E. O’Connor, doing business as O’Connor Electric Company and the Garden-ville Lumber & Supply Co., Inc., against the Newark Insurance Co.
The defendant, Constance V. Duggan, owner of the real property herein involved, entered into a contract with the defendant Davey Construction Corporation for the erection of a gasoline station according to certain plans and specifications, for the sum of $25,000. The owner leased the gasoline station to the Texas Company. Shortly after the signing of the agreement, a bond in the amount of $15,000 was executed by the Newark Insurance Company, naming the Davey Construction Corporation as principal, and Constance Y. Duggan as obligee.
That bond provided, among other things, as follows:
‘ ‘ Whereas, the above bounden Principal has entered into a written contract with the above named Obligee, dated the 15th day of September, 1955 to erect a Texaco Type E.M. Service Station, which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein.
“ Now, therefore, the condition of the above obligation is. such, that if the above bounden principal shall well and truly keep, do, and perform, each and every, all and singular, the matters and things in said contract set forth and specified to be by the said Principal, kept, done and performed at the time and in the manner in said contract specified, and shall pay over, make good and re-imburse to the above-named obligee, all loss and damage which said obligee may sustain by reason of failure or default on the part of the Principal, then this obligation shall be void; otherwise, to be and remain in full force and effect.
“ It will be noted that the bond recites ‘ which contract ’ is hereby referred to and made a part thereof as fully and to the same extent as if copied at length therein.”
Inasmuch as the bond refers to the contract and makes it part thereof, both must be read together in establishing the liability or nonliability of the bonding company. The contract, among other things, states that the contractor further agrees to furnish *110 a $15,000 bond to cover the payment of materials, the owner to pay the cost of said bond.
The Davey Construction Company completed a substantial palrt of the work and then abandoned the job, and since the abandonment has failed and neglected to carry out the terms of the contract. After the abandonment of the work, Constance V. Duggan duly notified the Davey Construction Co. to complete the work or she would complete the work herself. Up to the time 'of the abandonment, the Davey Construction Company was paid $18,000 in accordance with the terms of the contract. Thereafter the owner employed the Thomann Asphalt Co. to finish the erection and construction of the gasoline station, paying it $5,700 for so doing, leaving $1,300, to which the liens of the lienors attach. Mechanics’ liens were filed by eight lienors but three have failed to appear in this action.
That the owner had a right to complete the contract has been well established in Dennison Constr. Co. v. Manneschmidt (204 N. Y. 404) and Van Clief v. Van Vechten (130 N. Y. 571). The contract having been completed by the owner at a cost of $5,700, the liens of the lienors attach to the balance left after deducting the cost of completion plus the amount already paid to the defaulting contractor from the contract price of $25,000. (See Fraenkel v. Friedmann, 199 N. Y. 351; Campbell v. Coon, 149 N. Y. 556.)
The plaintiffs Raymond J. -Schmidt and George O. Schmidt, doing business as Schmidt Bros. Tile C!o., one of the lienors, brought an action against Charles J. Duggan and Constance V. Duggan, his wife, Davey Construction Corporation, Newark Insurance Company, and the Peoples Bank of Hamburg who hold a mortgage of $25,000 against the premises. The other lienors were made parties to the action.
I have disposed of the other actions that were consolidated with the instant one in separate decisions, and am considering in this opinion only the claims against the Newark Insurance Co.
The lienors seek to justify their claims against the surety on the doctrine of estoppel by virtue of the case of McClare v. Massachusetts Bonding & Ins. Co. (266 N. Y. 371). That case was decided on the doctrine of estoppel. This case cannot be -decided on the theory of estoppel for there is no proof that the lienors knew of the provisions of the bond and relied thereon which are necessary elements to establish estoppel. (See, also, Buffalo Cement Co. v. McNaughton, 90 Hun 74, affd. 156 N. Y. 702.)
One of the leading cases in connection with the liability of a surety is Fosmire v. National Sur. Co. (229 N. Y. 44). The *111 bond, among other things, provided in substance for the faithful performance of the work according to the terms of the contract; completing the work within the time prescribed in the contract; for any damage that may be caused arising out of the doing of the work during the term thereof until the completion of the work and in addition, if the principal should pay or cause to be paid in full wages to each laborer employed by the. principal oir his agent.
A laborer brought an action against the surety for wages due him under the contract.
The court said at page 48: “ The dominant purpose of this bond was protection to the state. That is plain alike from its ■terms and from those of the statute which required that security be given (Highway Law [§ 130, subd. 7], supra). This dominant purpose will be defeated if laborers may ignore the People and sue in their own right. They may then sue for wages as often as there is default, and exhausting the penalty of the bond, leaving nothing for the state. That danger was pointed out in Buffalo Cement Co. v. McNaughton (supra) where a like bond was given to a city by .the contractors for a sewer. ‘ Such actions might have been brought before the completion of the sewer, and the penalty named in the bond exhausted, and the city thereby deprived of the protection which the bond intended to give to it.’ (Buffalo Cement Co. v. McNaughton, supra, at p. 79. Lancaster v. Frescoln, 203 Penn St. 640, 644.) ”
The defendant prevailed. (See, also, McGrath v. American Sur. Co. of N. Y., 307 N. Y. 552.)
In Merchants Mut. Cas. Co. v. United States Fidelity & Guar. Co. (253 App. Div. 151) the court said at page 154: “ The extent of an undertaking is determined by the surety’s word of express promise. Accordingly, in the case before us, we need not strain the words of the defendant’s bond to hold that third parties, within a definite class, were intended as its beneficiaries. We find in the language of the condition of the bond as adopted by the defendant the essential ‘ clear intent ’ to benefit a class of creditors of which the plaintiff is one. (McClare v. Mass. Bonding & Ins. Co., 266 N. Y. 371, 377, 378; Fosmire v. National Surety Co., 229 id. 44, 48.) ”
In E. J. Eddy, Inc., v. Fidelity & Deposit Co. (265 N. Y. 276) the court said, at page 279:
‘ ‘ We assume that the beneficiary of a right so to sue may not enforce it .to the prejudice of a municipal corporation by which the right is created. The intention to make such a bond a means of securing compensation to those whose labor or *112 materials are to forward performance of a contract for public work is undoubtedly subordinate to the self-protection which is the first objective of the municipal corporation in taking the bond. It seems clear that a cause of action cannot be established in a case like this unless the municipal corporation has received upon a contract for public work the substantial performance which the bond of its contractor is primarily intended to secure. * * *
“ Banger that the city of Buffalo may be made the victim of a claim antagonistic to its own interest in the penalty of the bond is not apparent. The public worJc in question has been accepted by the municipal authorities and final payment for it has been made. (Italics mine.) (See, also, Daniel-Morris Co. v. Glens Falls Ind. Co., 308 N. Y. 464.)
The main point, as I see it, is whether or not there is a danger to the protection afforded by a performance bond, if a third party claims a right to be paid.
In the instant case, although the contractor defaulted, the contract has been fully performed by the engaging of another contractor who has been fully paid and there is left for distribution thirteen hundred dollars, which only covers a small part of the claims, so there is no danger to the obligee on the bond as far as performance is concerned.
As ¡stated before, the bond provided for the payment of (materials. The bond does not cover work performed by the -subcontractor. It is my opinion that the bond does provide for payment of materials no matter who furnished the materials whether the subcontractor or whether a materialman only. Those who furnish materials are entitled to be paid under the terms of the -bond, by the defendant surety company.
The lienors Raymond 0. Schmidt and George 0. Schmidt, doing business as Schmidt Bros. Tile Company, Salvatore Yovienne, doing business as Lackawanna Home Insulation, Fred C. Obersheimer, doing business as Sterling Glass Co. and Francis E. 0 ’¡Connor, doing business as O’Conhor Electric Co. -are not entitled as against the defendant Newark Insurance Company for the payment of any claim or part thereof as subcontracts for labor performed. The ¡afore-mentioned lienors and the Gardenville Lumber & Supply Co., Inc., are entitled to be paid by the Newark Insurance Company for their respective claims for materials furnished. From the Gardenville Lumber & Supply Co., Inc., claim there shall be deducted the amount paid it from the fund of $1,300 which I have directed by a separate memorandum to be distributed.
Judgment may be entered accordingly.