GREENBLOTT, J. P., KANE, MAHONEY and HERLIHY, JJ., concur.

Judgment affirmed, without costs.

NOVAK & CO., INC., Appellant, v TRAVELERS INDEMNITY COMPANY, Respondent.

Second Department, March 28, 1977

*Kuh, Shapiro, Goldman, Cooperman & Levitt, P. C. (Edward S. Wactlar* and *Robert N. Cooperman* of counsel), for appellant.

*Tunstead & Schechter (Michael S. Torre* of counsel), for respondent.

SHAPIRO, J. Upon defendant's motion "for an order pursuant to CPLR 3211 dismissing the complaint upon the grounds that plaintiff's cause of action is barred by the statute of limitation and release and that the complaint fails to state a cause of action," the Special Term of the Supreme Court, Kings County, made an order entered April 23, 1976 "that The Travelers Indemnity Company's motion for an order dismissing the complaint herein on the grounds that the complaint fails to state a cause of action, is hereby granted and the Court treats said motion as one for summary judgment under CPLR 3212 and hereby grants summary judgment dismissing plaintiff's complaint."[1] We affirm.

### THE ISSUE

May the plaintiff recover on the bond *given* by the defendant to the New York City Housing Authority (Authority) to guarantee *performance* by Wilaka Construction Co., Inc. (Wilaka) of the terms of its contract with the Authority?

### THE FACTS

Plaintiff entered into a contract with the Authority for the performance of plumbing work in connection with a project known as Independence Houses (Project). Contemporaneously, Wilaka similarly entered into a contract with the Authority for the performance of concrete foundation and general construction work at the Project (the contract).

By virtue of the provisions of the contract Wilaka was obligated to furnish the Authority with two separate bonds, designated respectively as a performance bond and a payment bond, and each was to be in an amount equal to 100% of the bid price. The purpose of the bonds was to keep the Authority adequately secured at all times against Wilaka's failure to perform faithfully the work and all other obligations imposed

---

1. Although the action of Special Term in granting summary judgment where the defendant had moved only for dismissal pursuant to CPLR 3211 (subd [a]) would ordinarily require a reversal of the order appealed from under the recent decision of the Court of Appeals in *Rovello v Orofino Realty Co.* (40 NY2d 633), the appellant, on oral argument, waived this procedural error and expressly asked that we reach and determine the decisive substantive issue of whether it may recover as a third-party beneficiary under the performance and payment bonds issued by the defendant.

upon it by the contract, including its obligation to indemnify the Authority and others against loss and claims arising out of the performance of the work. In accordance therewith, the defendant issued the necessary bonds to assure the good and faithful performance by Wilaka of its contract with the Authority. Each of the bonds was in the sum of $6,187,000. The performance bond contains the following language: "This undertaking is for the benefit of all Subcontractors, Materialmen, and workingmen having just claims and *for the benefit of all other third persons having just claims arising out of or in connection with the said Contract and Work performed thereunder,* as well as for the benefit of the Owner itself, but the rights and equities of all other beneficiaries or obligees hereunder shall be subject and subordinate to those of the Owner. Should any beneficiary or obligee hereunder, other than the Owner, file or make claims against the Principal or Surety, the said Principal and Surety shall promptly thereafter, or in any event at least fifteen (15) days prior to the payment of such claims, notify the Owner by registered mail of such claims." (Emphasis supplied.)

The payment bond contains the following language: "All persons who have performed labor, rendered services or furnished materials and supplies, as aforesaid, shall have a direct right of action against the Principal and his, its or their successors and assigns, and the Surety herein, or against either or both or any of them and their successors and assigns. Such persons may sue in their own name and may prosecute the suit to judgment and execution without the necessity of joining with any other person as party plaintiff."

Plaintiff's and Wilaka's contracts with the Authority provided that each "contractor shall lay out and install his work at such time or times and in such manner as not to delay or interfere with the progress of the work by each of the other contractors" and that "[i]f any other contractor * * * shall suffer loss, damage or delay through the acts or omissions on the part of the contractor herein * * * the contractor herein agrees to reimburse such other contractor * * * for his loss or damage." This provision, subdivision b of section 10 of the contract, goes on: "If such other contractor * * * shall assert any claim against the Authority on account of any loss, damage, or delay alleged to have been sustained, the Authority shall notify the contractor who shall save the Authority harmless against all claims, losses, costs, expenses, fees and

all other liabilities of whatsoever kind". Similarly, subdivision a of section 10 of the contract, which deals with loss caused by other contractors, declares that if the contractor should "sustain any loss, damage, or delay through any act or omission of any other contractor having a contract with the Authority for the performance of work * * * upon the site * * * which may be necessary to be performed in aid of the Work hereunder * * * the Contractor shall have no claim against the Authority for such loss, damage or delay, but shall have recourse solely to such other contractor." Thus, both subdivisions a and b of section 10 of the contracts between the Authority and the plaintiff and the Authority and Wilaka make it clear that those provisions of the contract were intended to limit each contractor's right of recourse for damage resulting from delay caused by another contractor to the contractor causing the delay and to absolve the Authority from liability.

Contending that Wilaka had failed to perform its work under the contract, the plaintiff sued Wilaka, the Authority and others to recover the damages which it thereby sustained. In that action plaintiff recovered a judgment against Wilaka in the amount of $390,875.75.

Thereafter plaintiff commenced this action against the defendant under both the performance bond and the payment bond to recover for the losses and damages which it sustained under the contract and the default of Wilaka thereunder.[2]

### THE APPLICABLE LAW

The cases cited in the briefs are in agreement that the test

---

2. We do not here discuss any possible claim of the plaintiff to recover on the payment bond as distinguished from the performance bond because in its prime brief plaintiff makes it clear that its only claim is that it "should be entitled to enforce payment therefor against the surety under the Performance Bond", and in its reply brief it admits that: "The Payment Bond specifically limts the claims to be made thereunder to those for wages and compensation for labor performed and services rendered by persons 'engaged in the *prosecution of the Work* under said Contract' and materials and supplies furnished, used or consumed by the principal or any subcontractor 'in the *prosecution of the Work* under said Contract.'" (Emphasis in brief.)

Clearly it does not bring itself within the class of persons so designated. However it then proceeds to say in its reply brief: "In contrast, the Performance Bond broadly confers any third person having a claim 'arising out of or in connection with or because of the performance of Work at the site of the project' with a direct right of action thereunder. Accordingly, it is apparent that the performance of Wilaka's work under the Contract by appellant is neither explicitly nor implicitly required for the maintenance of this action."

of whether a contractor's bond, be it a performance bond or a payment bond, or both, is intended to grant a third party the right to sue upon it depends upon whether it manifests a clear intent to grant that right to the third party. Thus, in the leading case of *Fosmire v National Sur. Co.* (229 NY 44, 47-48), Judge CARDOZO, speaking for the court, and holding that the plaintiff, a laborer employed by the principal who had contracted to build part of a State highway, and who sought to recover wages owed him by his employer, the contractor, from the issuer of his employer's performance bond, could not recover on the bond, said: "In so holding, we put our decision upon the single ground that the bond, read in its entirety, is inconsistent with an intention that the plaintiff and others in like position should have the right to sue upon it. If that intention is absent, the right to sue will be denied *(Simson v. Brown,* 68 N.Y. 355)."

In *McClare v Massachusetts Bonding & Ins. Co.* (266 NY 371), the defendant bonded the Collar City Athletic Club of Troy, N.Y., which had been granted a license to conduct boxing and wrestling matches. The club was required by the State Athletic Commission to obtain a surety bond for faithful performance of the act providing for professional boxing bouts. The club also provided a second bond, in the sum of $5,000, from defendant as a substitute for the posting of cash deposits with the State Athletic Commission to cover any forfeit or other indebtedness or liability by the club due and owing to any person or corporation by reason of any matter arising out of any sparring match conducted by the club during its license period, Plaintiff knew of and relied on the bond in furnishing the club printing services while the bond was in force. A majority of the Court of Appeals, in reversing a judgment in favor of the defendant on the pleadings, held (p 376): "In the case at bar we have a bond showing a clear intention on the part of this defendant to benefit two classes of creditors, namely those who were creditors because of debts arising on account of cash forfeits, and those who were creditors because they had furnished work, labor and services in connection with the staging of boxing bouts. To the latter of these plaintiff belongs. Also it cannot be denied that the bond was exacted by the State Athletic Commission for the very purpose of assuring to the plaintiff and others similarly situated the benefit of this security. * * * Something more is here than a mere incidental benefit, or a mere indirect or collateral advan-

tage, a lucky find or windfall, the accidental consequence of a promise conceived for the good of some one else." The majority also held (p 377): "To cull from the bond its true meaning and intention it must be read in its entirety, and the purpose and effect of the bond as a whole must be considered. No other purpose appearing than to benefit the two classes of creditors named, they are to be considered beneficiaries if the bond is to be given any effect whatsoever."

In *Merchants Mut. Cas. Co. v United States Fid. & Guar. Co.* (253 App Div 151), the plaintiff, claiming $8,503.33 for insurance premiums owed it by the defaulting general contractor in the construction of a public improvement, sued the surety on the contractor's performance bond to the City of Buffalo. The condition of the bond was that the contractor would "completely perform the said contract in accordance with the terms and stipulations therein contained, and shall in every respect strictly comply with and be bound by said contract * * * and shall well and truly pay all lawful claims of sub-contractors, materialmen or other third persons arising out of or in connection with said contract on the work performed thereunder" (p 153). The surety also agreed therein "that any sub-contractor, materialmen, laborers and third persons having just claims arising out of or in connection with the execution of the contract may maintain an action to recover for the same against the obligors in this bond as though such persons were named therein" (p 153). In reversing a judgment dismissing the complaint and directing judgment for the plaintiff, the Appellate Division, Fourth Department, said (pp 154-155):

"A bond such as the one we are now considering, which is conditioned to be void on fulfillment by the principal contractor of its obligations under the contract, is in legal effect a promise by the surety either that all contract obligations will be performed, or that the promisees will be indemnified within the limit of the penalty in case of nonperformance. Such being the surety's agreement we believe it may be fairly said that, given a contract such as the one before us, which specifically requires of a contractor that he furnish compensation and liability insurance incidental to the work involved, an unpaid creditor which has furnished that insurance may enforce payment therefor against the surety. *(McFarland v. Rogers,* 134 Me. 228; 184 A. 391.)

"The extent of an undertaking is determined by the surety's

words of express promise. Accordingly, in the case before us, we need not strain the words of the defendant's bond to hold that third parties, within a definite class, were intended as its beneficiaries. We find in the language of the condition of the bond as adopted by the defendant the essential 'clear intent' to benefit a class of creditors of which the plaintiff is one. (*McClare v. Mass. Bonding & Ins. Co.*, 266 N.Y. 371, 377, 378; *Fosmire v. National Surety Co.*, 229 id. 44, 48.) And although the consent expressly given in the bond by the defendant surety to an action by such third parties may not have been necessary to create a right of action in the plaintiff, it serves now to show the legal relation which the parties to the bond intended to create. (Corbin, 'Third Parties as Beneficiaries of Contractors' Surety Bonds,' 38 Yale Law Journal, 1, 18.)"

More recently, the Court of Appeals dealt with the problem of the right of action by a third-party beneficiary against a surety in *Scales-Douwes Corp. v Paulaura Realty Corp.* (24 NY2d 724). The plaintiff was a lienor for the materials and labor furnished for the improvement of privately owned real property. It sued the bonding company under a performance bond issued pursuant to a contract with the private owner of the improved land in which a town to which the land was later transferred was the obligee. The surety was to see that the owners paid the cost of improvement and dedicated this land to the town "free and clear of all liens and encumbrances". Plaintiff, which was owed over $33,000 by the owner for its work, filed a lien against the property. The Court of Appeals, in affirming the Appellate Division's holding that the plaintiff had no cause of action against the bonding company under its performance bond, said (p 726): "Several decisions in this court hold that a third-party performing services does not have a right of direct action on the bond in this kind of situation. *The theory is that this is essentially a performance bond* and not a payment bond *(Fosmire v. National Sur. Co., 229 N.Y. 44; McGrath v. American Sur. Co. of N.Y., 307 N.Y. 552).*

"The rule is different if the 'paramount purpose' of the bond is payment rather than performance *(McClare v. Massachusetts Bonding & Ins. Co.*, 266 N.Y. 371; *Daniel-Morris Co. v. Glens Falls Ind. Co.*, 308 N.Y. 464).

"The principle has become so settled that the court adheres to it and, therefore, the decision at the Appellate Division should be affirmed." (Emphasis supplied.)

In *J & J Tile Co. v Feinstein* (43 AD2d 529, 530), the Appellate Division, First Department, discussed the same problem and said: "The rule has developed with relation to combined payment and performance bonds that third parties have no direct cause of action thereon, unless it is established that there was an intent to confer such right of action. *(Fosmire v. National Sur. Co.,* 229 N.Y. 44.) * * * Regardless, however, of whether a bond or guarantee is involved, the question remains in each instance as to what the dominant purpose of the instrument was and whether there was an intent to confer a right to sue upon third parties."

We are faced here, however, with an issue which is unlike any raised in the line of cases cited and discussed above and in the briefs on appeal and in the decision at the Special Term. In all of those cases the plaintiffs seeking to enforce rights as third-party beneficiaries of a surety bond, whether it was a performance bond, a payment bond or a combined performance bond, were either suppliers of services or material as subcontractors or employees of the principal who had given the surety bonds. *Here the plaintiff is neither a subcontractor nor a supplier of labor or material to the surety's principal (Wilaka).* Rather, it is a third party which has no contractual relationship with the surety's principal. It is a contractor with the owner which is having the building project constructed, the Authority, and it seeks to recover from the surety for damages suffered by it as a result of the surety's principal's failure to keep to the time schedule for its portion of the construction set forth in the contract between the principal and the obligee of the bond, the Authority. That this breach of the principal's contract with the Authority exposed it to liability to the plaintiff under the provisions of the plaintiff's contract with the Authority, and of the principal's contract with the Authority, is beyond cavil. But the question here is whether the language in the surety's performance bond declaring that the surety's undertaking is not only "for the benefit of all Subcontractors, Materialmen, and workingmen having just claims", but also "for the benefit of all other third persons having just claims arising out of or in connection with the said Contract and Work performed thereunder", is intended to include a claim such as is here being made.

First, there is the question of whether plaintiff's claim for damages to it resulting from Wilaka's delay in doing its work

under its contract is a claim "arising out of or in connection with the said Contract and Work performed thereunder". Since the Wilaka contract provides that the "contractor shall lay out and install his work at such time or times and in such manner as not to delay or interfere with the progress of the work by each of the other contractors", and as Wilaka agreed to reimburse any other contractor who suffered loss or damage or delay through its acts or omissions for his damages, it would appear that plaintiff's claim is a loss arising in connection with the contract and the work performed thereunder. However, since Wilaka has already been held liable to plaintiff for those damages as a result of a suit brought against it by the plaintiff, the question here is whether the surety, because of its performance bond, became liable to the plaintiff because that judgment is uncollectible. Of relevance on this point are the provisions of section 10 of plaintiff's and of Wilaka's contract. Subdivision b of section 10 provides that if such contractor (plaintiff here) asserts any claim against the Authority on account of any damage or delay, "the Authority shall notify the contractor who shall save the Authority harmless". Subdivision a of section 10 declares that any contractor who suffers damage or delay because of any act or omission of any other contractor having a contract with the Authority for work on the site "shall have no claim against the Authority for such loss, damage or delay, but shall have recourse solely to such other contractor". These provisions clearly negate any intention on the part of the Authority, the obligee of the performance bond, to award third-party benefits, such as are here sought by plaintiff under the defendant's performance bond, by imposing on the surety the additional duty of having to insure payment of any judgment obtained against Wilaka for damages caused to third parties by Wilaka's delay in performing its work on the project.

Second, there is the question of whether the general language of the performance bond, with respect to the bond being for the benefit of all other third persons having claims arising out of or in connection with the said contract and work performed thereunder, is in any way limited by the specific language making the rights and equities of all other beneficiaries of the bond "subject and subordinate to those of the Owner", and requiring the principal (Wilaka) and the surety to notify the owner of any claims made against either of them by any beneficiary other than the owner at least 15 days prior

to the payment of any such claims. These provisions make it clear that the primary concern of the owner in obtaining the performance bond was to protect it against any claims which might be made against it. This conclusion is reinforced by the limitation of the measure of the surety's liability under the bond to the amount payable by the owner to Wilaka under the contract. If the bond were intended to protect the owner against all claims arising out misperformance by Wilaka, such as delays which could well result in damages in excess of the contract sum, i.e., if it were insurance protection against all possible liability to which the owner and the bonded contractor might be subjected, it would not be so limited.

Third, there is the question whether the language in the performance bond relied on by plaintiff gives it the right to sue defendant. The performance bond contains no such specific authorization. In stark contrast is the language in the payment bond, which grants "a direct right of action against the Principal * * * and the Surety herein, or against either or both or any of them" to "[a]ll persons who have performed labor, rendered services or furnished materials and supplies". Plaintiff is not among the classes listed as having a direct right of action against the surety under the payment bond. Hence its claim to have a right of action, if one exists (as it concedes, see n 2), can flow only from the performance bond and can find no basis in the language of the payment bond.

But the inclusion of a specific authorization for a direct right of action in the payment bond, as contrasted with the omission of such a provision in the performance bond, is most relevant on the issue whether the performance bond was ever intended to create a direct right of action in the plaintiff against the defendant surety when its judgment against Wilaka proved uncollectible. The very fact that the payment bond specifically authorized certain claimants to bring action against the surety while the performance bond contained no such authorization is an indication that the parties to both bonds, Wilaka, the Authority and the defendant, had no intention of extending the benefits of the performance bond to a claimant such as the plaintiff. The maxim *inclusio unius est exclusio alterius* supports this conclusion. Accordingly, the order appealed from should be affirmed.

RABIN, Acting P. J., TITONE and O'CONNOR, JJ., concur.

Order of the Supreme Court, Kings County, entered April 23, 1976, affirmed, with $50 costs and disbursements.